PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

F I L E D
United States Court of Appeals
Tenth Circuit

DEC 27 2004

PATRICK FISHER
Clerk

D.L., individually and as next friend of J.L., a minor; ESTATE OF R.L.; and P.P.,

        Plaintiffs - Appellants,

    v.

THE UNIFIED SCHOOL DISTRICT NO. 497; DR. DOUGLAS EICHER, School Administrator, individually and in his official capacity,

        Defendants - Appellees.

No. 03-3268

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 00-CV-2439-CM)**

---

Gregory P. Goheen of McAnany, Van Cleve & Phillips, P.A., Kansas City, Kansas, for Plaintiffs - Appellants.

W. Joseph Hatley of Lathrop & Gage, L.C., Overland Park, Kansas, for Defendants - Appellees.

---

Before **KELLY** , **HENRY** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

The suit before us on appeal arises out of a dispute concerning the eligibility of J.L. and R.L. (the children) for special-education services provided by Unified School District No. 497, Douglas County, Kansas (the District). Plaintiffs are J. L; the Estate of R.L., who died after the suit was filed; their mother D.L. (Mother); and her cohabiting boyfriend P.P. Defendants are the District and Dr. Douglas Eicher, its former director of special education.

Before this suit was filed, the District brought a state-court action (which is still pending) to require Mother and P.P. to pay for special-education services provided the children during a period when, according to the District, the children were not residents of the District and therefore were ineligible for those services. Plaintiffs then sued in federal district court, claiming that denial of the special-education services received by the children from the District would have violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; and the Fourteenth Amendment.

We exercise jurisdiction under 28 U.S.C. § 1291. We affirm the judgment in favor of Defendants on one part of the IDEA claim. As for the other claims before us, we hold that the district court should have stayed proceedings on the claims for damages and lacked jurisdiction to resolve the remaining claims

-2-

because of the pending state action. *See Younger v. Harris*, 401 U.S. 37, 54 (1971).

## I. Background

R.L. was autistic and his brother J.L. suffers from a milder learning disability. In August 1997 Mother enrolled the children in the District. During that school year an anonymous informant told the District that the children were nonresidents. When asked, Mother assured the District that she and the children were residents. In November 1999 an anonymous informant again told the District that the children were nonresidents. The District hired an investigator who discovered that they were being driven from Kansas City, Kansas, outside the District, to Lawrence, Kansas, inside the District, to attend school.

On January 4, 2000, the District wrote Mother saying that the children would not be permitted to return to school after January 13, 2000, the end of the semester. Plaintiffs requested a due-process hearing under the IDEA, but the District denied the request. On January 24, 2000, after negotiations between the District and counsel for Mother, Mother provided an affidavit of residency stating that R.L. was living with her within the District. The children were readmitted that day. In March 2000, however, the District again engaged an investigator who discovered that the children were commuting to school from Kansas City.

The District maintained a nonresident-admission policy under which nonresidents were admitted so long as there was space available in the District's schools. They were not admitted, however, if doing so would require the District to hire additional staff. Because each autistic student was assigned his own paraprofessional (and, apparently, the staff included no extra paraprofessionals for autistic students), autistic students were unable to obtain nonresident admission.

On April 18, 2000, the District sued Mother and P.P. in Kansas state court, seeking damages to compensate it for the cost of educating the children while they were nonresidents and an injunction prohibiting the children from attending District schools in the future. The crux of the suit is whether the children were entitled to the education they received from the District.

On September 29, 2000, Mother, P.P., and the children countered by filing suit in the United States District Court for the District of Kansas against the District, Dr. Eicher, and the members of the District's school board. They alleged that (1) the District violated the IDEA by denying the requested due-process hearing and by expelling the children from January 13 until January 24, 2000, when Mother provided the affidavit of residency; (2) the District violated the ADA, the Rehabilitation Act, and the Fourteenth Amendment by discriminating against Plaintiffs because of the children's residence and disabilities; (3) the

-4-

District violated the FERPA by disclosing the disabilities of the children in the state-court suit; and (4) the District violated Plaintiffs' common-law right to privacy by placing them under surveillance and making public statements about, among other things, their residency outside the district. Plaintiffs sought a variety of forms of relief: declaratory judgments (on their IDEA, ADA, Rehabilitation Act, and Fourteenth Amendment claims); "compensatory education" for wrongful expulsion of the children (on their IDEA claim); compensatory and punitive damages (on their Rehabilitation Act, ADA, FERPA, and common-law right-to-privacy claims); attorney and expert-witness fees (on their Rehabilitation Act, ADA, and Fourteenth Amendment claims); an injunction requiring the District to permit J.L. to attend school (on their Rehabilitation Act, ADA, and Fourteenth Amendment claims); an injunction requiring the District to adopt nondiscriminatory policies (on their Rehabilitation Act and ADA claims); and an injunction requiring Defendants "to abide by the statutory requirements of IDEA, specifically including the Procedural Safeguards which protect families from the abuses perpetrated by defendants." Aplt. App. at 6.

The district court dismissed all of P.P.'s claims for lack of standing, dismissed the claims against the school-board members as redundant because of the District's presence as a defendant, held that Plaintiffs had failed to state a claim under the FERPA, *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002),

-5-

and granted summary judgment in favor of Defendants on the ADA, Rehabilitation Act, Fourteenth Amendment, and invasion-of-privacy claims. The court also held that Dr. Eicher enjoyed qualified immunity and granted summary judgment in his favor on all claims. The court tried the IDEA claims on deposition testimony and documentary evidence. It decided that even if there had been a procedural violation, there had been no loss of substantive educational benefits, and held that Plaintiffs hence had no right to recovery.

Plaintiffs appeal the district court's judgment in favor of Defendants on the IDEA claims; the court's grant of summary judgment on the ADA, Rehabilitation Act, and constitutional claims; the court's grant of summary judgment as to Dr. Eicher; and the court's ruling that P.P. lacked standing.

## II.    *Younger* **Abstention**

Even when a federal court would otherwise have jurisdiction to hear a claim, the court may be obliged to abstain when a federal-court judgment on the claim would interfere with an ongoing state proceeding implicating important state interests. The classic example of this proposition, generally referred to as the *Younger* doctrine, is a federal suit to enjoin a pending state criminal proceeding. *See Younger*; *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280 (10th Cir. 1999) (applying *Younger*). But the *Younger* doctrine also can apply to a state-court *civil* proceeding, *see Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (civil

suit by state administrative agency to collect fraudulently obtained welfare

benefits), including state-court suits between two private parties, *see Pennzoil Co.

v. Texaco, Inc.*, 481 U.S. 1, 10 (1987).

Moreover, although *Younger* involved a request for injunctive relief against

the ongoing state proceeding, such relief need not be explicitly sought in federal

court. In an opinion issued concurrently with *Younger*, the Supreme Court held

that "the same equitable principles relevant to the propriety of an injunction

[apply] to . . . a declaratory judgment . . . . [W]here an injunction would be

impermissible under these principles, declaratory relief should ordinarily be

denied as well." *Samuels v. Mackell*, 401 U.S. 66, 73 (1971). The Court

expressed two reasons for treating declaratory relief essentially the same as

injunctive relief. First, even though a party seeks only declaratory relief, once a

declaratory judgment is obtained, the party may obtain an injunction to enforce

the declaratory judgment. *Id.* at 72. If, for example, the court's declaratory

judgment states that a statute is unconstitutional, the court may then enjoin a

prosecution of the federal plaintiff under the statute. Second, a federal-court

declaratory judgment would ordinarily have preclusive effect in the state-court

proceeding. *Id.* Once the declaratory judgment is entered, the victorious party

could insist in state court that the legal proposition declared in federal court

cannot be disputed in the state proceeding. Thus, a state-court prosecution of the

federal plaintiff may not be able to proceed under a statute declared unconstitutional in the federal-court proceeding.

These same two reasons apply, of course, regardless of the relief initially sought in the federal-court suit. For example, a plaintiff who seeks only monetary damages could, once a money judgment is obtained, seek the additional relief of an injunction and could argue in state court that the federal judgment has preclusive effect. Accordingly, the *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding. *See generally Gilbertson v. Albright*, 381 F.3d 965, 978-80 (9th Cir. 2004) (en banc). The rationale for *Younger* abstention can be satisfied, however, by just staying proceedings on the federal damages claim until the state proceeding is final. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S.706, 730 (1996) ("we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether); *Gilbertson*, 381 F.3d at 980-82.[1]

*Younger* abstention is jurisdictional. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 100 n.3 (1998) (distinguishing case cited by dissent in support

---

[1]In *Weitzel v. Dep't of Commerce of State of Utah*, 240 F.3d 871, 874-75, 877-78 (10th Cir. 2001), we affirmed the dismissal of a damages claim under the *Younger* doctrine. But that decision has no precedential value with respect to this issue because the opinion did not address whether a stay would be the proper disposition.

of hypothetical jurisdiction as decided on "*Younger* abstention, which we have treated as jurisdictional"). We address it at the outset because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge. Indeed, we have no power to decide an issue if we lack jurisdiction. *See id.* at 93-102. We may address jurisdictional issues in any order we find convenient. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (deciding personal as against subject-matter jurisdiction); *Younger*, 401 U.S. at 54 ("Because our holding rests on the absence of the factors necessary . . . to justify federal intervention, we have no occasion to consider whether [the Anti-Injunction Act] . . . would in and of itself be controlling . . . .").

## III. *Younger* Abstention Applied

We proceed to consider Plaintiffs' claims to determine whether it is appropriate to exercise federal jurisdiction over each. We examine only the claims Plaintiffs continue to assert on appeal; we lack jurisdiction to inquire into judgments not appealed, whether or not jurisdiction was properly exercised below. *See Snell v. Tunnell*, 920 F.2d 673, 676 (10th Cir. 1990). We turn first to Plaintiffs' ADA, Rehabilitation Act, and Fourteenth Amendment claims, and hold that *Younger* abstention is required. We then address Plaintiffs' IDEA claim. We

hold that part of this claim is subject to *Younger* abstention and that the remainder was properly rejected by the district court on summary judgment.

### A.    The ADA, Rehabilitation Act, and Fourteenth Amendment Claims

Plaintiffs contend that the District's nonresident-admission policy violates the ADA and the Rehabilitation Act by treating disabled nonresident children differently from nonresident children who are not disabled; that denying admission to the children on the basis of residency would be a violation of their Fourteenth Amendment right to travel; that equal-protection principles required the District to admit them as nonresidents; and that the nonresident-admission policy violates due process by denying their "property interest [in the children's] education and . . . fundamental liberty interest in having as many residences as they desire." Aplt. Br. at 24.

The district court lacked jurisdiction over each of these claims. Each claim asserts the entitlement of the children to the education they received from the District. The court could not grant any relief—injunctive, declaratory, or monetary—without concluding that the children were so entitled. If any claim succeeds, then there is no merit to the District's state-court suit, which seeks reimbursement from Mother and P.P. for educational expenses of the children to which they, as nonresidents, were not entitled. Therefore, a resolution favorable to Plaintiffs in this case would foreclose that suit (and might even be enforced by

-10-

a federal injunction against the suit), an interference with state-court litigation that is impermissible under *Younger*. *See Samuels*, 401 U.S. at 72-73.

*Younger* abstention is inappropriate when a federal plaintiff cannot pursue its federal contentions in the ongoing state proceeding. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-37 (1982). But no reason appears why Plaintiffs' contentions here could not be interposed as defenses in state court. *See Lebbos v. Judges of Superior Court*, 883 F.2d 810, 815 (9th Cir. 1989) (opportunity to raise federal contentions as defenses is sufficient).

There remains, however, one further complication in this case. The parties are not identical in the state and federal lawsuits. In state court the District is plaintiff, and Mother and P.P. are defendants. In federal court Mother and P.P. are joined as plaintiffs by J.L. and the Estate of R.L., who are not parties in the state case. Likewise, the District is not the only defendant; an additional defendant is Dr. Eicher, who is not a party in the District's state suit to recover the cost of the children's education. Consequently, we must decide whether *Younger* bars the claims of J.L. and the Estate of R.L. against either defendant, and bars the claims of all plaintiffs against Dr. Eicher, even though J.L., the Estate of R.L., and Dr. Eicher are not parties in the state case. As we proceed to explain, we hold that the *Younger* bar does extend to these claims.

Two 1975 Supreme Court opinions provide guidance. In *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 924 (1975), three bartenders faced with a local ordinance prohibiting topless dancing filed federal challenges to the constitutionality of the ordinance. One bartender violated the ordinance and was prosecuted. *Id.* at 925. The other two did not. *Id.* at 924-25. The Court held that *Younger* barred the claim of the prosecuted bartender, but not the claims of the other bartenders. It added, however, that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Id.* at 928. In the other case, *Hicks v. Miranda*, 422 U.S. 332, 334-35 (1975), a state prosecuted theater employees for showing an obscene film, and seized several copies of the film. When the theater owners brought a federal-court challenge, the Court applied *Younger*. The Court wrote, "Absent a clear showing that [the owners] . . . could not seek the return of their property in the state proceedings and see to it that their federal claims were presented there," *Younger* abstention could not be avoided. *Id.* at 349. The owners, it said, "had a substantial stake in the state proceedings, so much so that they sought federal relief . . . . Obviously, their interests and those of their employees were intertwined; and, as we have pointed out, the federal action sought to interfere with the pending state prosecution. *Id.* at 348-49.

*Doran* illustrates that it is proper for a federal court to exercise jurisdiction over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding by resolving legal issues identical to those raised in state court—for example, both proceedings may involve challenges to the same ordinance as an unconstitutional restraint on expressive activity. *See Doran*, 422 U.S. at 928. So long as the stranger has its own distinct claim to pursue, it may even be aligned with the state-court litigant in a common enterprise of vindicating the policy that gives rise to their individual claims. *See Federal Home Loan Bank Bd. v. Empie*, 778 F.2d 1447, 1452 (10th Cir. 1985); *Robinson v. Stovall*, 646 F.2d 1087, 1091 (5th Cir. 1987) ("neither a common interest in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs"). But when in essence only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court, *Younger* applies. *See Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002) (corporation cannot avoid *Younger* by having subsidiaries sue in federal court when federal relief could obstruct enforcement of any state-court remedy); *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 81-84 (2d Cir. 2003) (*Younger* applies to persons not parties in state proceeding when free-speech right asserted is purely derivative of free-speech rights of defendant in state proceeding).

J.L. and the Estate of R.L. seek to vindicate in federal court the right of the children to the education they received from the District. The state-court defense of Mother and P.P. that they do not have to pay the District for that education necessarily derives from the entitlement of the children to that education. As Judge Wisdom wrote in *Robinson*, "The federal plaintiffs and state defendants in *Hicks* had much closer mutual interests than common membership in, or support of, a large political organization: they were the owners and employees of the same small business." 646 F.2d at 1092. Here we are presented with a familial relationship, even closer than the business relationship in *Hicks*, and with similar preclusive consequences. *Cf.* Restatement (Second) of Judgments § 41(1)(c) (person is bound by judgment binding "executor, administrator, *guardian*, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary" (emphasis added)); *id.* § 51(1) (preclusive effect of judgment when party in one case is vicariously liable for conduct of party in other case). Accordingly, we hold it improper under *Younger* to exercise federal jurisdiction over the claims of J.L. and the Estate of R.L. even though they are not parties to the state-court suit.

Plaintiffs' claims against Dr. Eicher are similarly barred because of the close connection of those claims to their claims in state court and the close connection of Dr. Eicher to the District, which is the plaintiff in state court.

Plaintiffs' allegation against Dr. Eicher is that he was the officer of the District responsible for many of its allegedly unlawful actions. Whether Dr. Eicher's actions were appropriate depends on whether the children were entitled to the education they received. Plaintiffs' claim against Dr. Eicher is derivative of, if not the same as, their claim against the District. The relationship between Dr. Eicher and his former employer, the District, is comparable to that between the theater owners and their employees in *Hicks*. In the context of the claims on appeal, Dr. Eicher is a mere alter ego of the District.

## B.  The IDEA Claims

When Mother was informed of the District's plan to expel the children as nonresidents, she asked the District for a due-process hearing under the IDEA. Plaintiffs' federal suit claims that the District's denial of this request constitutes an actionable violation of the IDEA. As we understand this claim, it does not assert any right of the children to the education received from the District and resolution of the claim would not interfere with the state-court litigation. Thus, there is no *Younger* bar.

Nevertheless, we are compelled by our decision in *T.S. v. Ind. Sch. Dist. No. 54,* 265 F.3d 1090 (10th Cir. 2001), to affirm the district court's decision denying relief. In that case we held that "[f]or a claim based on deprivation of [an IDEA] due process hearing . . . to be cognizable, [it] must be linked with a

-15-

consequent loss of substantive benefits." *Id.* at 1093. Here, there was no "loss of substantive benefits." Not only do Plaintiffs fail to allege any connection between the denial of the due-process hearing and any substantive educational harm, they fail to allege any substantive educational harm at all. Indeed they tell us that "all parties agree that the school district provided [the children] an 'appropriate public education' . . . during the time they attended school in the district." Aplt. Br. at 10. Plaintiffs do not contend on appeal that expulsion of the children between January 14 and January 21, 2000, constitutes a substantive educational harm. (Apparently, Mother and P.P. were too ill to take the children to school.) Thus, under *T.S.*, we must affirm.

Plaintiffs may, however, be contending that the substantive harm is the state-court suit to recover the cost of educating the children; they say that the suit was "the ultimate result" of the denial of the due-process hearing. Aplt. Reply Br. at 7. But to the extent that Plaintiffs raised this contention below, *Younger* deprived the district court of jurisdiction to resolve it. The state suit would constitute an injury to Plaintiffs only if it lacked merit; and, as explained above, *Younger* prohibits federal litigation that seeks to establish the lack of merit of pending state litigation.

So, too, for Plaintiffs' remaining contention—that the state-court suit violated the IDEA independently of the denial of the due-process hearing. A

-16-

decision that the state-court suit violated the IDEA would necessarily imply that the children were entitled to the education they received. Thus, it would preclude the District's state-court claim, contrary to *Younger*.

Finally, we observe that P.P. lacks standing to raise the only claim not barred by *Younger*. The constitutional mandate that federal courts can hear only a Case or Controversy, U.S. Const. art. III § 2, requires "a plaintiff [to] show [that] (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Here P.P. fails to show a redressable injury in fact with respect to the nonbarred claim. Although the denial of a right guaranteed by statute may constitute an injury in fact, *see Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998), P.P. does not (and could not) contend that the IDEA granted him the right to a hearing, *see* 20 U.S.C. §§ 1415(a) (hearing provided for children and their parents), 1401(19) (defining "parent"). The only injury alleged by P.P. is the state-court litigation. That alleged injury may give him standing with respect to the claims barred by *Younger*, but it is not an injury redressable through the one nonbarred claim—which is not barred precisely because it does not question the

-17-

state-court litigation.  Therefore, the district court properly dismissed this claim of P.P.'s for lack of standing, and we AFFIRM that dismissal.

With respect to the other claims, we AFFIRM the judgment below as to the IDEA claim based on alleged denial of a due-process hearing, VACATE the judgment as to all other claims raised on appeal, and REMAND for the district court to STAY proceedings on the claims for damages and DISMISS without prejudice the remaining vacated claims.