PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CAROLINA CASUALTY
INSURANCE COMPANY and
DENVER C. FOX,

        Plaintiffs - Appellants,

   v.

PINNACOL ASSURANCE,

        Defendant - Appellee,

----------------------------------------------

AMERICAN ASSOCIATION OF
PEOPLE WITH DISABILITIES; THE
ARC IN JEFFERSON COUNTY; THE
ARC OF ADAMS COUNTY, INC.;
THE ARC OF ARAPAHOE AND
DOUGLAS COUNTIES; THE ARC
OF COLORADO-ADVOCATING
FOR PEOPLE WITH
DEVELOPMENTAL DISABILITIES;
ARC OF DENVER, INC.; THE ARC
OF THE UNITED STATES;
ASSOCIATION FOR COMMUNITY
LIVING IN BOULDER COUNTY;
THE ASSOCIATION FOR PERSONS
IN SUPPORTED EMPLOYMENT;
BAZELON CENTER FOR MENTAL
HEALTH LAW; CEREBRAL PALSY
OF COLORADO; COLORADO
CROSS-DISABILITY COALITION;
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND, INC;

No. 02-1512

DISABILITY RIGHTS ACTION
COMMITTEE; EMPLOYMENT
LINK; NATIONAL ASSOCIATION
OF PROTECTION AND ADVOCACY
SYSTEMS; SELF-ADVOCATES
BECOMING EMPOWERED,

Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 00-MK-1164 (BNB))**

---

Timothy P. Fox (Amy F. Robertson, with him on the briefs), of Fox & Robertson, P.C., Denver, Colorado, for Plaintiffs - Appellants.

David R. DeMuro, of Vaughan & DeMuro, Denver, Colorado, (Lana L. Steven, of Vaughan & DeMuro, Denver, Colorado, and Michael J. Steiner, General Counsel, Pinnacol Assurance, Denver, Colorado, with him on the brief), for Defendant - Appellee.

Kevin W. Williams, Legal Program Director, Colorado Cross-Disability Coalition, Denver, Colorado; Michael W. Breeskin, Counsel, Arc of Denver, Inc., Denver, Colorado; Richard F. Armknecht, III, of Armknecht & Cowdell, P.C., Lindon, Utah, on the brief for Amici Curiae.

---

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

This dispute arises out of a 1998 claim by a mentally disabled person,

Jeremy Dymowski, against Rocky Mountain Job Opportunity Brigade (RMJOB),

which had engaged him on a church clean-up crew. After he was injured at work, Mr. Dymowski, rather than bringing a workers' compensation claim, sued RMJOB in tort. Plaintiff Carolina Casualty Insurance Co. was RMJOB's general liability insurer. It settled with Mr. Dymowski, but only after RMJOB had unsuccessfully requested its workers' compensation carrier, Defendant Pinnacol Assurance, to participate in the settlement negotiations.

In one of the communications between RMJOB and Pinnacol, Pinnacol's lawyer wrote that Mr. Dymowski lacked the mental capacity to enter into a contract of employment and hence could not be an "employee" under the Pinnacol insurance policy. Carolina and Plaintiff Denver C. Fox, President of RMJOB, claim that by refusing to pay on this ground, Pinnacol discriminated against them on the basis of their association with a mentally disabled person in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, 28 C.F.R. § 35.130(g). Carolina also asserts its entitlement on state-law contract and promissory-estoppel grounds to reimbursement for its defense and settlement of Mr. Dymowski's suit.

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's grant of summary judgment for Pinnacol. Before addressing the merits, we reject Pinnacol's contention that Carolina lacks constitutional standing. On the merits we hold that Pinnacol owed RMJOB no duty to defend

Mr. Dymowski's lawsuit or contribute to the settlement. Plaintiffs concede that the absence of such duties would foreclose their claims. Because our decision on the merits with respect to Carolina's claims would also defeat Fox's claims, we need not address whether Fox has standing.

## I. BACKGROUND

RMJOB trains and pays mentally disabled people to perform useful services. On February 5, 1998, Mr. Dymowski was part of an RMJOB work crew cleaning a church. During a break he attacked another worker; when he was restrained by an RMJOB supervisor, he suffered a broken arm.

On February 12 Martha J. Dymowski, Mr. Dymowski's stepmother and guardian, asked RMJOB to file a workers' compensation claim on Mr. Dymowski's behalf. On February 18 RMJOB reported the injury to Pinnacol (then known as the Colorado Compensation Insurance Authority), but on February 20 Ms. Dymowski withdrew the claim.

Eight months later, on November 2, 1998, Mr. Dymowski sued RMJOB in Colorado state court. He asserted common-law negligence and breach-of-contract claims, a state statutory deceptive-trade-practices claim on the ground that RMJOB had misrepresented its work environment as safe and appropriate for mentally disabled persons such as him, and a state statutory claim for violation of regulatory standards promulgated under the Colorado Care and Treatment of the

Developmentally Disabled Act, Colo. Rev. Stat. 27-10.5-101 *et seq.* This was the suit that Carolina defended and settled.

Ordinarily a worker has no right to sue his employer in tort. If the worker is an "employee" and is injured while "performing service arising out of and in the course of the employee's employment," he or she is entitled to benefits under the workers' compensation system. *See* Colo. Rev. Stat. § 8-41-301. The benefits are available regardless of fault, *see Colo. Springs Disposal v. Indus. Claims Appeals Office of Colo.,* 58 P.3d 1061, 1063 (Colo. App. 2002), but they are limited—for example, punitive damages and pain-and-suffering damages are not included, *see* Colo. Rev. Stat. § 8-42-102 *et seq.*; *Reliance Ins. Co. v. Blackford*, 100 P.3d 578, 580 (Colo. App. 2004) (pain-and-suffering damages not available)—and other claims against the employer ordinarily are not permitted, *see* Colo. Rev. Stat. § 8-43-201; *Horodyskyj v. Karanian*, 32 P.3d 470, 474, 478–80 (Colo. 2001) (en banc) (but recognizing exception for sexual-harassment claim). Although the availability of benefits regardless of fault makes workers' compensation attractive to employees, the limitations on damages may encourage a worker to assert that he was not an employee or that the injury occurred outside the course of employment, in which case a tort claim is not barred. *See Horodyskyj*, 32 P.3d at 474.

The question whether an injury comes under the workers' compensation statute can be important to insurance companies as well as workers, because typically, as in this case, different policies cover workers' compensation liability and general tort liability. As a result, the insurer under one policy may seek (either directly or through the enterprise insured by both policies) assistance from the other insurer when workers' compensation coverage is debatable. That occurred here.

While the state-court suit was pending, RMJOB repeatedly asked Pinnacol to participate in its defense and settlement. Pinnacol refused. In an April 1, 1999, letter, Pinnacol (which in February 1998 had responded to the original report filed by RMJOB by contending that the injury was "Not Work-Related," R. at 91) stated that it had "several defenses," namely, that Mr. Dymowski "may not have been an employee," "has never filed a claim for compensation," and was not within the "building maintenance and light janitorial" job classifications covered by the policy. *Id.* at 225. In a letter the next day Pinnacol withdrew the job-classification defense but reasserted that Mr. Dymowski was neither "an employee [n]or injured within the course and scope of his employment." *Id.* at 228. On June 18, 1999, Pinnacol sent RMJOB a letter declining to participate in a settlement conference on the ground that Mr. Dymowski's "injury is not compensable under the Workers' Compensation Act." *Id.* at 230. Finally, in a

July 23, 1999, letter Pinnacol claimed that its duty to defend and indemnify RMJOB did not extend to Mr. Dymowski's claim because his mental disability prevented him from contracting for employment, and thus from being an "employee" within the meaning of RMJOB's Pinnacol policy.

It was the July 23 letter that landed Pinnacol in federal court. In their November 8, 2000, second amended complaint, Carolina and Fox claim that Pinnacol's refusal to defend RMJOB and indemnify Carolina was on account of their association with the mentally disabled Mr. Dymowski, and hence a violation of the ADA. *See* 28 U.S.C. § 12132; 28 C.F.R. § 35.130(g).[1] Carolina also brought two state-law claims as RMJOB's subrogee. First, it contended that Pinnacol had breached its insurance contract with RMJOB. Second, it contended

---

[1]Section 12132 provides:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

The regulation provides:

A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

28 C.F.R. § 35.130(g).

We need not decide whether the regulation is consistent with § 12132.

-7-

that Pinnacol is estopped to deny that its policy covered Mr. Dymowski as an employee because Pinnacol had promised to provide coverage for disabled employees and RMJOB had paid premiums in reliance on the promise.

The district court granted summary judgment for Pinnacol on each of Carolina's claims. It held that Pinnacol was not obliged by its workers' compensation policy to defend or indemnify RMJOB. It further reasoned that (1) because Pinnacol owed no duty under the workers' compensation policy, the breach-of-contract and promissory-estoppel claims failed, and (2) the refusal to perform an act that it had no contractual obligation to perform could not be an adverse action under the ADA.

Plaintiffs appeal the grant of summary judgment. But they stated in their reply brief that they "agree that if Pinnacol had no duty" to provide coverage, then their "claims fail," Aplt. R. Br. at 2, and they repeated this concession at oral argument. Thus, just as it did in the view of the district court, this case turns on whether Pinnacol owed RMJOB a duty to defend or indemnify in connection with Mr. Dymowski's state-court suit. If Pinnacol owed neither duty, then, by Plaintiffs' concession, we must affirm the judgment.

In addition to claiming no duty, Pinnacol contends that Plaintiffs lack (1) constitutional standing to assert any of their claims and (2) statutory standing to

assert their ADA claim.  For the reasons that follow, we hold that Carolina has constitutional standing and need not address the other standing issues.

## II.    STANDING

Article III, Section 2 of the United States Constitution extends the judicial power only to "Cases" or "Controversies."  A dispute is an Article III "Case" or "Controversy" only if the plaintiff can establish what is known as "constitutional standing."  Constitutional standing is present if the plaintiff:

> show[s] [that] (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *see D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1232 (10th Cir. 2004); *Cetacean Comm. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (distinguishing constitutional from statutory standing).

Congress may extend the right to sue under a statute to any plaintiff that has constitutional standing.  It may also, however, place additional restrictions on who can sue, imposing requirements of "statutory standing."  *Cetacean Comm.*, 386 F.3d at 1175.

Because constitutional standing is necessary to the court's jurisdiction, as a general rule it must be addressed before proceeding to the merits.  *See Steel Co. v.*

*Citizens for a Better Environment*, 523 U.S. 83, 96–97, 97 n.2 (1998) (noting, however, that court can dismiss claim for lack of statutory standing without first addressing constitutional standing). To say what the law is without establishing that we have authority to do so would "carr[y] [us] beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers." *Id.* at 94.

On the other hand, statutory standing need not be addressed if the court determines that the plaintiff loses on the merits anyway. As the Supreme Court observed,

> The question whether *this* plaintiff has a cause of action under the statute, and the question whether *any* plaintiff has a cause of action under the statute are closely connected—indeed, depending upon the asserted basis for lack of statutory standing, they are sometimes identical, so that it would be exceedingly artificial to draw a distinction between the two.

*Id.* at 97 n.2. Resolving the merits without first deciding statutory standing

> does not take [us] into vast, uncharted realms of judicial opinion giving[,] whereas the proposition that the court can reach a merits question when there is no Article III jurisdiction opens the door to all sorts of generalized grievances that the Constitution leaves for resolution through the political process.

*Id.* (internal quotation marks and citation omitted).

## A. Carolina's Constitutional Standing

Constitutional standing, because it is jurisdictional, may be raised at any stage of the proceeding. *See Steel*, 523 U.S. at 93. To establish standing

[e]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotation marks omitted). Carolina appeals a grant of summary judgment. Thus, it must show each element of constitutional standing "by affidavit or other evidence" tending to establish "specific facts." *Id.* at 561.

Pinnacol rightly does not challenge actual injury (Carolina paid for the defense and settlement of Mr. Dymowski's suit) and redressability (damages would make Carolina more whole). Moreover, Carolina is asserting its common-law breach-of-contract and promissory-estoppel claims as RMJOB's subrogee, and therefore can rely on the injury that RMJOB would have suffered had Carolina not agreed to defend and settle Mr. Dymowski's suit. *See Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773–74 (2000) (subrogee has standing to assert subrogor's actual injury). Pinnacol contests only causation—whether "the injury is fairly traceable to the challenged action of the defendant." *D.L.*, 392 F.3d at 1232. It argues that "[t]here is no causal connection between the actual injury suffered by Carolina Casualty, payment of the defense and settlement of the state court lawsuit, and the actions

-11-

of Pinnacol, which had no responsibility to defend the state court lawsuit."
Aplee. Br. at 25.

The trouble with this contention is that Pinnacol's duty (responsibility) is irrelevant to constitutional standing. Causation is established by showing that Carolina was injured by Pinnacol's failure to defend or contribute to the settlement—as it plainly was, because it paid and Pinnacol did not. The injury is thereby traced to "the challenged action of the defendant." *Friends of the Earth*, 528 U.S. at 180. Whether this failure to defend or indemnify violated a duty owed by Pinnacol is then a matter for the merits hearing, not for a standing inquiry. *See Steel*, 523 U.S. at 92–93 (whether cause of action exists is merits question, not jurisdictional one). We hold that Carolina has constitutional standing.

**B.    Carolina's Statutory Standing**

Pinnacol further contends that Carolina lacks standing under the ADA. Unlike constitutional standing, however, statutory standing need not be resolved before consideration of the merits. As explained above, if Carolina loses on the merits, the issue of statutory standing becomes moot and need not be addressed. As explained below, that is the situation here.

**C.    Fox's Standing**

-12-

Under the doctrine set forth in *Steel*, ordinarily we could not address the merits of Fox's claim without first determining that he had Article III standing. But *Steel*'s general rule that the court must first address a plaintiff's constitutional standing has a natural exception when the merits have been resolved with respect to a separate claim for which the plaintiff (likely, a different plaintiff) has such standing.

An example of such a circumstance is *Norton v. Mathews*, 427 U.S. 524 (1976). The Supreme Court in *Norton* found it unnecessary to decide the jurisdictional issue before it because, as *Steel* explained, "the merits question was decided [against the plaintiff] *in a companion case*." *Steel*, 523 U.S. at 98. "Thus, *Norton* did not use the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Id*. The *Norton* exception to the general ban on assumed jurisdiction does not "enable[] a court to resolve contested questions of law when its jurisdiction is in doubt" and thus does not produce an "advisory opinion" that infringes on the separation of powers. *Id*. at 101.

In this case we affirm the judgment against Carolina on a ground that would also require affirmance of the judgment against Fox. Affirming the judgment against Fox would therefore not require an "advisory opinion." Thus, as we understand *Steel*, we can affirm the judgment against Fox without first

determining that he has Article III standing. Other circuits have expressed a similar understanding of *Steel*. *See Seale v. INS*, 323 F.3d 150, 152-57 (1st Cir. 2003) (binding precedent "foreordains the outcome on the merits here"); *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 193-95 (2d Cir. 2002) (same); *see also 21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 202-03 (Williams, J., dissenting in part) (resolution of one issue between the parties "totally resolves" the merits of a second issue, so unnecessary to determine jurisdiction over second issue); *United States v. Tex. Tech Univ.*, 171 F.3d 279, 287 n.11 (5th Cir. 1999) (questioning scope of holding in *Steel*). Indeed, when the merits are otherwise resolved, "it is the adjudication of the standing issue that resembles an advisory opinion." *Bush*, 304 F.3d at 195.

We now explain our ruling on the merits.

## III. DUTIES TO DEFEND AND INDEMNIFY

RMJOB's Pinnacol policy contains two parts: (1) workers' compensation insurance; and (2) employers' liability insurance. Because Plaintiffs did not rely on the employers' liability part of the Pinnacol policy in district court, they may not do so on appeal. *See Laurino v. Tate*, 220 F.3d 1213, 1218 n.4 (10th Cir. 2000). We therefore address only the workers' compensation part of the policy, which states:

**. . . We Will Pay**

-14-

We will pay promptly when due the benefits required of you by the workers' compensation law.

**. . . We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits. We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Aplt. App. at 296.

The duties to defend and indemnify are integrally related. Under Colorado law when an insurer provides coverage both to defend and to indemnify against certain types of claims, the insurer ordinarily has no duty to defend a claim against the insured absent a possibility that the claim will result in a judgment for which the insurer has a duty to indemnify. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003) (en banc) (to avoid duty to defend, insurer must prove that claim cannot fall within policy). Here, Plaintiffs contend that the suit by Mr. Dymowski against RMJOB raises a claim for which Pinnacol had a duty to indemnify because the historical facts alleged in Mr. Dymowski's complaint, particularly as those facts were fleshed out in litigation, would establish that he would be entitled to relief under the workers' compensation act. The facts alleged in a complaint, not the complaint's legal characterization of those facts, ordinarily control coverage. *See Cyprus*, 74 P.3d at 301 (resolving duty to defend on "*any facts* or claims" alleged in the

-15-

complaint); *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745–46 (Pa. 1999); *St. Paul Ins. Co. v. Tex. Dep't of Trans.*, 999 S.W.2d 881, 887 (Tex. App. 1999). Consequently, Plaintiffs argue, Pinnacol should have provided a defense to the state-court suit and should have contributed to the settlement.

Plaintiffs' argument has a ring of plausibility. But it ignores the special features of workers' compensation. Colorado, as is typical among the states, provides a specialized administrative system for the resolution of workers' compensation claims. *See* Colo. Rev. Stat. § 8-43-201,[2] *et seq*; *Colo. Compensation Ins. Co. v. Jorgensen*, 992 P.2d 1156, 1159 (Colo. 2000) (en banc) (describing § 8-43-201 administrative jurisdiction as "exclusive"). Judicial review of final orders of the administrative-hearing division is available only in the Colorado Court of Appeals. *See* Colo. Rev. Stat. § 8-43-307.

Accordingly, Mr. Dymowski could not seek workers' compensation benefits through a suit in Colorado trial court, and RMJOB could not have been held liable by a trial court for such benefits. For a trial court to award workers' compensation benefits would be to violate the administrative system's exclusive

---

[2]In relevant part that section provides:

The director and administrative law judges employed by the division of administrative hearings in the department of personnel shall have original jurisdiction to hear and decide all matters arising under articles 40 to 47 of this title [concerning workers' compensation].

jurisdiction to decide workers' compensation claims. *See* § 8-43-201. (This is not to say, however, that a matter decided in court cannot have preclusive consequences in a workers' compensation proceeding. *See Eldridge v. Circle K Corp.*, 934 P.2d 1074, 1080 (N.M. App. 1997).)

Simply put, there was no possibility that the state court could impose on RMJOB a judgment for workers' compensation benefits, which is what Pinnacol provided indemnity coverage for. Evidence at the state-court trial establishing all the elements necessary for a proper workers' compensation claim could not have entitled Mr. Dymowski to workers' compensation benefits. Those benefits can be awarded only by the administrative tribunal with exclusive jurisdiction over such claims. Even settlements must be approved by the agency. *See* Colo. Rev. Stat. § 8-43-204(3).

A compelling majority of the courts to consider the issue agree that a workers' compensation insurer does not owe a duty to defend in a state-court tort suit despite an allegation that the suit should have been brought as a workers' compensation claim. The California Supreme Court has explained:

> [W]e have held that a duty to defend arises when the suit *potentially* seeks damages within the coverage of the policy. We recognized, however, that the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.
>
> No such potential existed in this case. Regardless of the merit of the claims alleged in [the] complaint, the superior court never had

-17-

> jurisdiction to award workers' compensation benefits.  Rather, the award of such benefits is within the exclusive jurisdiction of the [Workers' Compensation Appeals Board].

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 884 P.2d 1048, 1057 (Cal. 1994) (en banc) (internal citations and quotation marks omitted).  *Accord Springdale Donuts, Inc. v. Aetna Cas. & Surety Co. of Ill.*, 724 A.2d 1117, 1121 (Conn. 1999) ("Because the underlying claims were filed in federal court, not with the workers' compensation commission, and did not state any claims for workers' compensation benefits, the underlying claims are not within the purview of the plaintiff's workers' compensation policy."); *Hames Contracting, Inc. v. Ga. Ins. Co.*, 440 S.E.2d 738, 740 (Ga. App. 1994) ("the [workers' compensation] coverage . . . is limited to claims for benefits required of an insured employer under the applicable workers' compensation law as defined in the general section of the policy.  The civil suits for damages against Hames did not aver such claims.  Thus, these suits did not aver any claims "covered" by the workers' compensation insurance."); *Bond Builders, Inc. v. Comm. Union Ins. Co.*, 670 A.2d 1388, 1390 (Maine 1996) ("On its face Commercial Union owes no duty, by virtue of . . . its [workers' compensation] policy, to defend Santos's tort action."); *HDH Corp. v. Atlantic Charter Ins. Co.*, 681 N.E.2d 847, 850–851 (Mass. 1997) ("Atlantic is correct that it had no duty to defend the civil action because the complaint did not state a claim that could result in liability which Atlantic would

be obligated to pay under any reasonable interpretation of . . . the [workers' compensation] policy . . . . [T]here are fundamental differences between a claim for workers' compensation benefits and a lawsuit seeking civil damages."). *Contra Quick v. Ronald Adams Contractor, Inc.*, 861 So.2d 278, 282 (La. Ct. App. 2003) (workers' compensation policy required insurer to defend suit "alleging the facts of an injury and damages . . . that are covered by workers compensation insurance").

These cases interpret standard workers' compensation policies as providing coverage only with respect to proceedings within the workers' compensation administrative regime. Although the evidence produced in a tort case may indicate that the claim could have been brought as a workers' compensation claim, that evidence becomes relevant to coverage only if the claim is brought in the proper administrative tribunal.

We agree. As the above cases illustrate, the common understanding of workers' compensation insurance coverage, and the natural reading of the Pinnacol policy (providing that it "will pay . . . the benefits required . . . by the workers' compensation law") is that coverage is limited to claims within the worker's compensation administrative regime. It is important to recognize that RMJOB's workers' compensation coverage could not benefit RMJOB with respect to a judgment against it in the state-court tort suit. Assume, say, that

Mr. Dymowski had somehow obtained workers' compensation benefits based on his injury from the February 5, 1998, incident. A tort judgment against RMJOB would not be reduced by the amount of workers' compensation benefits, nor could RMJOB (or its general-liability insurer) seek contribution or indemnification from RMJOB's workers' compensation carrier. On the contrary, the workers' compensation carrier would be subrogated to Mr. Dymowski's claim in the tort case. Part, or perhaps even all, of his recovery in the tort case would be directed to reimbursement of the carrier. *See,* Colo. Rev. Stat. § 8-41-203(b), (c); *Jorgensen v. Colo. Comp. Ins. Auth.*, 967 P.2d 172, 173 (Colo. App. 1998).

Thus, the workers' compensation carrier and the general-liability insurer are not on the same footing. They are not to share in the costs arising from a worker's injury. Rather, money is to come first from tort recovery, and from workers' compensation coverage only as a second resort. To impose upon Pinnacol a duty to defend or indemnify in this case would undercut this policy, providing an exception to the general proposition that the tort system, rather than workers' compensation, should be the bearer of costs when both are implicated.

Workers' compensation is the original social insurance. *See* Price V. Fishback & Shawn Everett Kantor, *The Adoption of Workers' Compensation in the United States, 1900–1930*, 41 J. L. & Econ. 305 (1998); John M. Kleeberg, *From Strict Liability to Workers' Compensation*: *The Prussian Railroad Law, The*

-20-

*German Liability Act, and the Introduction of Bismarck's Accident Insurance in Germany, 1838–1884*, 36 N.Y.U. J. Int'l L. & Pol. 53 (2003). Most employers are required by law to obtain a workers' compensation insurance policy or to prove the capacity to self-insure. *See* Colo. Rev. Stat. § 8-44-101. Although benefits are limited, they provide a safety net for injured employees that is available relatively promptly and regardless of who, if anyone, was at fault. In part because of concern that high insurance premiums will lead to diminished employment opportunities, workers' compensation disputes are resolved through administrative agencies to reduce costs and focus limited funds on compensating workers. In this context, courts should be reluctant to interpret workers' compensation coverage to impose on the insurer duties arising out of tort litigation.

Accordingly, we hold that Pinnacol did not owe RMJOB a duty to defend or indemnify in Mr. Dymowski's state-court tort suit.

Plaintiffs argue that the Colorado Supreme Court's recent decision in *Cyprus* compels a contrary result. But we see nothing in that opinion that conflicts with the above analysis. *Cyprus* arose from a landslide that rendered unusable a mine that Cyprus Amax Mineral Co. had sold to Coeur d'Alene Mines Corp. *Cyprus*, 74 P.3d at 297. After the landslide, Coeur d'Alene sued Cyprus, alleging "that Cyprus negligently, recklessly, or deliberately failed to disclose

material facts regarding conditions at the [m]ine." *Id.* at 298. The case was settled for $31 million. *Id.* After the settlement Cyprus sought indemnification under policies providing that the insurers would indemnify it "for a loss . . . imposed . . . by law or assumed by contract . . . on account of . . . property damage." *Id.* The policies defined property damage as "physical injury to or destruction of tangible property, including the loss of use thereof." *Id.*

The insurers contended that Coeur d'Alene's complaint had asserted "claims based entirely on fraud and other intentional acts by Cyprus and involved only economic damages, not property damage." *Id.* But the court held that the Coeur d'Alene complaint "alleged facts that could lead to a recovery for 'property damage,'" *id.* at 302, and so held that summary judgment for the insurers was inappropriate, *id.* at 308. Along the way, the court wrote: "The determination of whether a duty to indemnify exists requires factual development, as it is largely a question of fact. Extrinsic evidence may assist the trial court in determining whether and to what extent actual liability, as represented by a verdict or settlement, is covered by an existing policy." *Id.* at 301–02. Plaintiffs contend that summary judgment was inappropriate here because they offered such extrinsic evidence—namely, "substantial evidence . . . that Mr. Dymowski suffered a personal injury as an RMJOB employee and [that] the injury [thus] fell within Pinnacol's . . . coverage." Aplt. Br. at 36.

*Cyprus* is distinguishable, however, because the insurance coverage in *Cyprus* was not forum specific. The policy was written so that the duty to indemnify turned on whether certain facts—a loss imposed by property damage—could be established. A loss could be the subject of indemnity regardless of what tribunal, if any, determined the essential facts. Here, in contrast, as we have stated above, the Pinnacol workers' compensation coverage encompasses only claims proceeding through the workers' compensation system. In *Cyprus* no public policy established a hierarchy among types of insurance coverage, as in the workers' compensation arena, in which the workers' compensation carrier can obtain reimbursement from a tort recovery but a general-liability carrier has no like rights with respect to an award of workers' compensation benefits. If the injury in *Cyprus* was within the property-damage coverage, there would be no reason to preclude *Cyprus* from seeking indemnification for what it had paid as tort liability. Accordingly, we hold that *Cyprus* is inapposite.

## IV.  CONCLUSION

Pinnacol did not owe RMJOB a duty to defend in the state-court suit or a duty to indemnify it for the settlement of that suit. And because Plaintiffs have conceded that their claims fail if Pinnacol did not owe RMJOB either of these duties, that conclusion resolves this appeal.

We AFFIRM the district court's grant of summary judgment for Pinnacol.