**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DCR FUND I, LLC, a Florida limited
liability company,

       Plaintiff-Appellee,

  v.

TS FAMILY LIMITED
PARTNERSHIP, an Oklahoma limited
partnership; MOSHE TAL, an
individual; TAL TECHNOLOGIES,
INC., an Oklahoma corporation,

       Defendants-Appellants,

     and

JIM ROTH; STAN INMAN; JACK
CORNETT, as Board of County
Commissioners; FORREST BUTCH
FREEMAN, as Treasurer of Oklahoma
County, Oklahoma; OKLAHOMA
EMPLOYMENT SECURITY
COMMISSION; L.D. RHODES OIL
CO., an Oklahoma corporation; L. D.
RHODES; THE CITY OF
OKLAHOMA CITY, a municipal
corporation,

       Defendants,

  v.

BANK ONE, N.A.; T. VAN
ROBERTS; C. E. RENFRO; KEVIN
BLANEY, BRIDGEVIEW BANK,
N.A.,

No. 05-6232
(D.C. No. 03-CV-772-L)
(W.D. Okla.)

Third-Party-
Defendants-Appellees,

SUCCESSOR METROBANK, N.A.,

Cross-Claimant-
Appellee.

## ORDER AND JUDGMENT[*]

Before **O'BRIEN**, **PORFILIO**, and **ANDERSON,** Circuit Judges.

In 2001 appellant Tal Technologies Inc. ("TTI") defaulted under the terms of a November 8, 1996, promissory note ("Note") in favor of appellee Bank One, N.A. ("Bank One"). Bank One subsequently sold the Note to appellee DCR Fund I, LLC ("DCR"). When TTI failed to comply with DCR's demands for payment, DCR filed this action seeking foreclosure of an associated mortgage and the enforcement of guaranty agreements provided to secure the loan. The

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

defendants[1], led by TTI's president, appellant Moshe Tal, asserted a defense and numerous counterclaims based on the contention that Bank One had orally agreed to defer payments under the Note until the completion of a condemnation proceeding involving property owned by Mr. Tal in downtown Oklahoma City. The defendants also asserted third-party claims against Bank One based on its sale of the Note to DCR without disclosing the alleged oral agreement. DCR and Bank One denied the existence of any such agreement and moved for summary judgment. On December 6, 2004, the district court granted the motion based primarily on its determination that any oral deferral agreement between Bank One and TTI was barred by Oklahoma's credit agreement statute of frauds, Okla. Stat. tit. 15, § 140. The court also awarded summary judgment to appellee Bridgeview Bank, N.A. ("Bridgeview"), which had been brought into the action because of its interest in the mortgaged property. Defendants appeal, and we affirm.

I. Background and Procedural History

*A. DCR Note*

The Note is a boiler-plate, one-page document executed by Mr. Tal on behalf of TTI in the principal amount of $250,000. It provided for 59 monthly

---

[1]     Our use of the generic term "defendants" throughout this order and judgment refers only to the defendants who filed the instant appeal, TTI, Moshe Tal, and TS Family Limited Partnership. DCR named several other entities and individuals because of their possible interests in the property at issue, but the claims against those parties are not relevant to this appeal.

payments plus one additional payment, with accrued interest, due on the maturity date of November 8, 2001. The Note was secured by a first mortgage on TTI's property located at 200 S.E. 3rd Street in Oklahoma City (the "TTI property") and two guaranty agreements, one provided by Mr. Tal personally and the other by appellant TS Family Limited Partnership ("TSFLP"). Two provisions of the Note are relevant here. The "ACCELERATION" clause provided that,

> [a]t option of holder, the unpaid balance of this Note . . . shall become immediately due and payable without notice or demand upon the occurrence or existence of any of the following events or conditions: (a) Any payment required by this Note . . . is not made when due . . . .

Aplt. App. Vol. 7 at 2522. The second relevant clause, entitled "ENTIRE AGREEMENT," specifically required any future modifications to the Note to be in writing.

> All parties acknowledge receipt of a copy of this Note and that this Note and related documents contain the complete and entire agreement between Debtor and Lender and no variation, modification, changes or amendments to this Note or related documents shall be binding unless in writing and signed by all parties.

*Id.*

In 1998 TTI stopped making payments under the Note, and Bank One filed a foreclosure action concerning the TTI property. To avoid the foreclosure, in March 1999 TTI borrowed enough money to bring the Bank One loan current from Bridgeview's predecessor, MetroBank, N.A. To secure this loan, TTI

-4-

granted MetroBank a second mortgage on the TTI property. In exchange for payment totaling approximately $60,000, Bank One dismissed the foreclosure action. TTI continued to make payments under the Note until March 2001, when it again defaulted. It also failed to pay the Note in full upon maturity in November 2001.

In July 2002, Bank One sold the Note and assigned its interest in the mortgage and guaranty agreements to DCR. Shortly thereafter, DCR began its attempts to collect under the Note by sending demand letters to Mr. Tal in his capacity as president of TTI. Mr. Tal responded to one such letter on February 2, 2003, by explaining his plan to consolidate DCR's loan with the Bridgeview loan. He assured DCR that he was "only a few weeks away from getting everything line[d]-up." *Id.* at 2537. He also "remind[ed]" DCR of Bank One's alleged agreement to defer payment under the Note pending the outcome of the condemnation litigation, which, he explained, was not proceeding as quickly as anticipated. *Id.* When DCR requested documentation as to the alleged oral deferral agreement, however, none was forthcoming. On April 21, 2003, DCR sent a formal notice of default to TTI, Mr. Tal, and TSFLP, demanding full payment under the Note in the amount of $233,076.97 plus future interest. When the defendants failed to meet this demand, DCR filed this action against them and named Bridgeview as a defendant because of its security interest in the TTI property.

-5-

*B. Bridgeview Loans and the BGE Property*

In addition to the funds it loaned to TTI in March 1999 to stop Bank One's foreclosure action, Bridgeview made several other loans to TTI, which it secured with property owned by Bricktown Grain Elevator Company ("BGE"), another of Mr. Tal's related entities. BGE had borrowed money from Bridgeview in January 1999, securing the loan with a first mortgage on property that it owned at 300 S.E. 4th Street in Oklahoma City ("BGE property"). TTI's March 1999 loan was secured by a second mortgage on the BGE property in addition to the second mortgage on the TTI property. In June 1999, TTI borrowed more money from Bridgeview to fund the ongoing condemnation litigation. This so-called litigation loan was renewed in October 2000. On May 15, 2001, TTI consolidated the March 1999 and October 2000 loans by executing a promissory note in favor of Bridgeview in excess of $200,000. This May 2001 loan was secured by interests in both the TTI and BGE properties.

Shortly after DCR filed this action, Bridgeview filed a cross-complaint against TTI for defaulting on the May 2001 loan. The cross-complaint sought foreclosure of Bridgeview's second mortgage on the TTI property, but specifically reserved Bridgeview's "right to foreclose other mortgages which secure the [May 2001] Note against real property other than the [TTI property]." *Id.* Vol. 1 at 72. Concurrently, Bridgeview was pursuing a non-judicial foreclosure of its mortgage on the BGE property. On July 3, 2003, it sent a

"Notice of Intent to Foreclose by Power of Sale" to BGE and Mr. Tal, advising of its intent to foreclose the BGE mortgage pursuant to its rights under the January 1999 and May 2001 loan documents. *Id.* Vol. 4 at 1569-71. On October 20, 2003, Mr. Tal attempted to stop the foreclosure sale by requesting injunctive relief in this action. The district court denied the application on October 27 because it found that BGE was not a party to, and its property not subject to, this action. A state court judge also refused to enjoin the sale, and the BGE property was sold on October 28. Nonetheless, on November 26, Mr. Tal filed a Rule 60(b) motion in this action asking the district court to reconsider or vacate its denial of injunctive relief. The district court denied that motion on May 17, 2004, explaining that it had no power to enjoin a sale of land that had already occurred and that, in any event, it lacked jurisdiction to invalidate the sale of property that was not part of this action. The court further held that it lacked subject-matter jurisdiction over the claims that Mr. Tal was attempting to assert concerning the BGE property because those claims raised no questions of federal law and were asserted against Oklahoma citizens.[2] The court went on to reject Mr. Tal's attempt to invoke the supplemental jurisdiction statute, stating:

> In this case, the court has original jurisdiction – based on diversity jurisdiction – over DCR's claim regarding the TTI note and

---

[2] Mr. Tal had previously filed a motion seeking to consolidate this action with one he filed in state court against Bridgeview, its officers, and others for their involvement in the non-judicial foreclosure sale of the BGE property.

-7-

mortgage. Tal seeks to interpose state law claims against non-diverse defendants regarding a different loan, made by a different bank, at a different time, and secured by different real property. The claims that Tal seeks to raise are simply not so related to the DCR case that they are part of the same case or controversy. Furthermore, the values of judicial economy, convenience, fairness, and comity do not compel the court's exercise of supplemental jurisdiction over these claims as they are currently being litigated in state court.

*Id.* Vol. 5 at 1978-79 (quotation omitted).

*C. Award of Summary Judgment to DCR, Bridgeview, and Bank One*

Both DCR and Bridgeview moved for summary judgment on their claims under their respective loan documents relating to the TTI property. Bank One joined DCR's motion, seeking dismissal of the third-party claim. Each motion was accompanied by the relevant promissory notes, mortgage, and guaranty documents as well as evidence of TTI's default. Mr. Tal responded on behalf of the defendants. He conceded executing the relevant loan documents, but argued that other disputed facts excused TTI's failure to pay.

With respect to DCR's claim, he asserted that his agreement with Bank One to defer payments under the Note until the conclusion of the condemnation litigation constituted an executed oral agreement under Oklahoma law that changed the terms set forth in the Note. He claimed that not only was TTI not in default, but that DCR should be held liable for breaching the executed oral agreement. He made similar arguments in response to Bridgeview's motion, claiming that MetroBank had orally agreed to extend the line of credit secured by

the TTI property, but that Bridgeview's management reneged on the agreement after assuming control of the bank. He further claimed that Bridgeview's new management then coerced him into consolidating the March 1999 and October 2000 loans under extremely unfavorable terms that he agreed to solely because he had been under intense stress both personally and professionally. He also argued TTI did not default on the May 2001 loan because Bridgeview, through a pattern of practice, had agreed to accept irregular payments with the understanding that TTI's largest client was usually late in paying TTI's invoices. Finally, Mr. Tal argued Bridgeview's cross-claim was simply an attempt to gain court approval of its unlawful non-judicial foreclosure sale of the BGE property.

On December 6, 2004, the district court granted the creditors' motions, rejecting as a matter of law all affirmative defenses based on alleged oral agreements. Specifically, the court concluded the alleged oral agreements, which contradicted the express terms of the loan documents, ran afoul of the parol evidence rule, the notes' integration clauses, and Oklahoma's statute of frauds. Given the legal insufficiency of the defense, the court declined to decide whether the defendants had presented enough evidence to establish the existence of the oral agreements. The court went on to dismiss the defendants' counterclaims as well as the third-party claim against Bank One.

With respect to Bridgeview's claim, the court rejected Mr. Tal's duress defense as a matter of law because it was not caused by any actions of

Bridgeview; his stress in May 2001 was caused by a combination of his wife's illness and the failure of TTI's clients to timely pay their bills. Like DCR, the court concluded that Bridgeview was entitled to foreclose its lien on the TTI property because the defendants admitted to executing the May 2001 note and mortgage documents and failed to establish a defense to non-payment. Since the principal and interest due under that loan was satisfied by the proceeds from the sale of the BGE property, the court declared Bridgeview's mortgage a junior lien on the TTI property, which secured payment of its attorneys fees, as provided under the loan documents.

Defendants appeal the district court's summary judgment ruling as well as several other orders, as discussed below.

## II.  Discussion

Defendants have identified no less than twenty issues for review and attached to their briefs an appendix consisting of seventeen district court orders that allegedly contain factual and/or legal errors. Their briefs, however, fail to substantively address most of the issues raised, and to a large degree, do not identify which specific orders contain the complained-of errors. While we have done our best to match the challenged orders with the legal issues substantively discussed in the briefs, this court will not comb through a voluminous record searching for legal and factual findings to support vague allusions in the briefs. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). After

-10-

carefully considering defendants' arguments, we conclude they have sufficiently raised, such that we may adequately address, the following four issues: (a) whether the district court's December 6, 2004, order granting summary judgment in favor of DCR, Bridgeview, and Bank One was correct; (b) whether the court erred in denying Mr. Tal's request for injunctive relief with respect to Bridgeview's sale of the BGE property and denying his request to assert claims arising out of the sale; (c) whether the court erred in barring Mr. Tal's pro se representation of TTI and TSFLP; and (d) whether it abused its discretion in denying the defendants' motion to extend the discovery period.

*A. Summary Judgment Ruling*

We review a district court's grant of summary judgment de novo, construing all facts and reasonable inferences in the light most favorable to the non-moving party. *Henrie v. Northrop Grumman Corp.*, 502 F.3d 1228, 1231 (10th Cir. 2007). We must affirm the award of summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In diversity cases our role is to ascertain and apply the proper state law . . . with the goal of insuring that the result obtained is the one that would have been reached in the state courts. We review de novo the district court's rulings with respect to state law." *Henrie*, 502 F.3d at 1231 (quotation omitted).

The district court relied on several legal principles in concluding DCR and Bridgeview were entitled to summary judgment on their foreclosure claims. However, the application of Oklahoma's statute of frauds was dispositive and we can affirm on that basis alone. *See Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006) (noting this court's discretion to affirm on any ground adequately supported by the record). Even if the defendants could prove the existence of oral agreements that contradicted the terms of the relevant loan documents and could further establish exceptions to the parol evidence rule and the notes' integration clauses, their asserted defenses based on the oral agreements were conclusively barred by Oklahoma statute.

> Under Oklahoma law, a borrower may not
>
> maintain an action to enforce or seek damages for the breach of any term or condition of [a] credit agreement having a principal amount greater than Fifteen Thousand Dollars . . . unless such term or condition has been agreed to in writing and signed by the party against whom it is sought to be enforced.

Okla. Stat. tit. 15, § 140(B). Credit agreement is defined as

> an agreement by a financial institution to lend money, extend credit or otherwise make any other financial accommodation, or to renew, extend, modify, rearrange or forebear the repayment of any such loan, extension of credit or financial accommodation, but does not include any promissory note, real estate mortgage, or security agreement.

*Id.*, § 140 (A)(1). This law is "intended to discourage lender liability litigation and to promote certainty into credit agreements," *Brown v. Founders Bank and*

*Trust Co.*, 890 P.2d 855, 862 (Okla. 1994), and clearly applies to the facts of this case.  There is no dispute that any agreement by Bank One or Bridgeview to accept deferred payments under the relevant promissory notes would constitute a credit agreement under § 140, as found by the district court.  It is also beyond dispute that if the parties reached such agreements, they were not reduced to writing.  The assertion of this defense, therefore, raised no disputed material fact for the jury's consideration, and summary judgment in favor of DCR and Bridgeview was therefore proper.  *See Big John's Lumber Co. of Muskogee v. City Bank of Muskogee*, 901 P.2d 832, 833-34 (Okla. Civ. App. 1995) (affirming grant of summary judgment to bank under § 140 because borrower's conversion claim was based on alleged oral agreement to lend money in excess of $15,000).

Defendants contend that the banks' agreement to accept deferred payments constituted "executed oral agreements" under Okla. Stat. tit. 15, § 237, sufficient to modify the terms of the written loan documents notwithstanding the statute of frauds.[3]  We reject this argument because section 237 is inapplicable to the facts of this case.  It has long been established that "the subsequent executed oral agreement referred to in § 237 . . . must be established by positive, clear and convincing proof."  *Dewberry v. Universal C.I.T. Credit Corp.*, 415 P.2d 978, 979

---

[3]      Section 237 provides that "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

(Okla. 1966) (quotations omitted). Furthermore, even once established, an oral agreement is "ineffective to alter the terms of the written contract until its terms have been fully executed." *Id.* The district court in this case held that "[g]iven [the] lack of evidence, it [was] not at all apparent that the Tal defendants could prove by clear and convincing evidence the existence of an executed oral agreement to defer payment." Aplt. App. Vol. 9 at 3188 n.9. Our own review of the parties' summary judgment papers revealed nothing that would cause us to disagree with this assessment. Moreover, it is undisputed that even if the parties took some actions consistent with the alleged oral agreements, such agreements were never fully executed. Under these circumstances, they could not operate to alter the terms of the written loan documents, and DCR and Bridgeview were therefore entitled to summary judgment. *See Walker v. Johnson*, 227 P. 113, 114 (Okla. 1924) (holding that extinguishment of written contract could not be proved by unexecuted parol agreement).[4] It follows that the defendants' third-party claim

---

[4]     Defendants also assert error with respect to the district court's dismissal of their conspiracy counter-claim against DCR. Although their argument is accompanied by citations to a handful of documents in the record, defendants fail to explain how these documents support a claim for conspiracy, something that is not obvious to this court. Given their failure to present a cogent argument as to how the district court erred with respect to these defendants on this issue, we affirm the dismissal of the conspiracy claim without further discussion. *See Scott v. Hern*, 216 F.3d 897, 910 n.7 (10th Cir. 2000) (declining to manufacture a party's argument on appeal).

against Bank One based on its failure to disclose the alleged oral agreement failed as a matter of law.

## B. *Bridgeview's Sale of the BGE Property*

Defendants' second assertion of error concerns the district court's rulings with respect to Bridgeview's sale of the BGE property.  In addition to requesting injunctive relief to halt the sale, the defendants asserted numerous cross-claims against Bridgeview after the sale, including claims for conspiracy, abuse of process, and conversion.  In its December 6, 2004, order, the district court dismissed those claims for the same reasons it denied Mr. Tal's request for injunctive relief, concluding that it had no jurisdiction over claims relating to the BGE property.  Defendants appeal both the denial of injunctive relief and the dismissal of their cross-claims.  Instead of addressing the district court's jurisdictional analysis, however, they primarily challenge the court's evidentiary rulings and focus on reasons why they believe the BGE sale was unlawful.  We need not address those arguments because the district court was correct with respect to its jurisdiction.  We also fail to see how any claims challenging a foreclosure sale that the state court allowed to proceed could pass muster under either the *Younger* abstention or *Rooker-Feldman* doctrines.[5]  We therefore affirm

---

[5]     "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced."

(continued...)

both the district court's denial of injunctive relief and its dismissal of claims arising out of Bridgeview's sale of the BGE property.

*C. Mr. Tal's Pro Se Representation of Corporate Defendants*

Mr. Tal, proceeding pro se, filed a separate brief on appeal challenging multiple orders denying his requests to personally represent TTI and TSFLP in this action. His arguments concerning this issue are rambling and confusing, but generally, he contends that although he is not a lawyer, he is entitled to legally represent the corporate defendants pursuant to various assignments and his rights as a corporate officer and lien holder. Additionally, he argues that the rule requiring a corporation to appear in federal court only through an attorney at law is unconstitutional.[6] Mr. Tal concedes that he argued this identical issue in *Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006), which was still pending before this court when the instant appeal was briefed. We have since rendered a decision in that

---

[5](...continued)
*Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quotations omitted) (per curiam); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). *Younger* abstention applies even if the state proceedings are on-going when the federal action is filed so long as the state action implicates important state interests with which a federal judgment would interfere. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1227-28 (10th Cir. 2004) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971)).

[6]      *See, e.g., Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se."); *see also* W.D. Okla. L. Civ. R. 17.1 ("Parties who are not natural persons may not appear pro se").

case, however, in which we rejected Mr. Tal's arguments, holding squarely that "the district court did not err in denying Tal the right to represent Tal, Inc. and Bricktown, Inc. *pro se* and requiring the corporations to secure counsel." *Id.* at 1254. For the same reasons discussed in that opinion, *see id.* at 1254-55, we reject Mr. Tal's arguments here. We also agree with the district court that Mr. Tal's arguments based on the assignment documents are without merit.

*D. Motion to Extend Discovery Period*

On May 4, 2004, the district court entered a scheduling order setting a discovery cut-off date of September 1, 2004. A week before the cut-off date, the defendants filed a motion to extend the discovery period, arguing that the case was too complex to complete discovery within the time allotted, particularly since counsel for the corporate defendants had only recently entered an appearance. DCR, Bridgeview, and Bank One countered that an extension of the discovery period would only reward the defendants' dilatory conduct. They pointed out that the court had ordered Mr. Tal to secure counsel for the corporate defendants in August 2003, but that he had delayed doing so by filing one motion after another until May 2004. Even so, they argued there was sufficient time between the corporate counsel's entry of appearance and the discovery cut-off, and that the only reason the defendants had not been able to complete discovery was because they had squandered that time. On September 7, 2004, the district court denied the motion based on the parties' responses, without further discussion.

The defendants appeal the district court's order, renewing their argument that the case was too complex to complete discovery in the time allotted. This argument erroneously assumes that Mr. Tal was justified in failing to secure counsel for the corporate defendants for nearly a year after he was ordered to do so. In short, the defendants have "offered no colorable reason why the discovery deadline should have been extended." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1151 (10th Cir. 2006). Therefore, the district court did not abuse its discretion in denying the extension.

### III. DCR's Request For Attorneys' Fees

Finally, we address DCR's request for appellate attorneys' fees under both the express provisions of the Note and Okla. Stat. tit. 12, § 936. Section 936 provides:

> In any civil action to recover . . . on [a] . . . note, bill, negotiable instrument . . . , unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The district court granted DCR's request with respect to fees incurred below, and we see no reason to deny its request on appeal. *See Cadle Co. v. Bianco*, 849 P.2d 437, 440 (Okla. Civ. App. 1992) (upholding award of attorneys' fees under section 936). Moreover, the Note expressly provided that "[a]ll parties liable for payment . . . agree to pay reasonable costs of collection, including an attorney's fee." Aplt. App. Vol. 7 at 2522. Since we affirmed the district court's award of

-18-

summary judgment to DCR on its claims under the Note and guaranty documents, an award of appellate attorneys' fees is warranted.

## IV.  Conclusion

For the reasons discussed above, we AFFIRM the judgment of the district court in all respects.  We grant DCR's request for attorneys' fees on appeal and REMAND to the district court for the limited purpose of determining the proper amount.

Entered for the Court

Terrence L. O'Brien
Circuit Judge