**PUBLISH**

**February 23, 2010**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

D.L., individually, as the next friend of
J.L., and as the Administratrix of the
Estate of R.L.; P.P,

     Plaintiffs-Appellants,

v.

UNIFIED SCHOOL DISTRICT NO. 497,
DOUGLAS COUNTY, KANSAS;
DOUGLAS EICHER, School
Administrator, individually and in his
official capacity,

     Defendants-Appellees.

No. 08-3273

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:00-CV-02439-CM)**

---

Gregory Goheen of McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, for
Plaintiffs - Appellants.

W. Joseph Hatley of Spencer, Fane, Britt & Browne, L.L.P., Kansas City, Missouri, for
Defendants - Appellees.

---

Before **KELLY, EBEL,** and **TYMKOVICH,** Circuit Judges.

---

**PER CURIAM**.

Plaintiffs-Appellants—J.L. and the estate of R.L., along with their mother D.L. and her boyfriend P.P.—appeal from a grant of summary judgment in favor of Defendants-Appellees. Plaintiffs brought a variety of claims challenging a local school district's conclusion that Plaintiffs J.L. and R.L. were ineligible for special education services. In pertinent part, these claims arose under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482, § 504 of the Rehabilitation Act (Rehabilitation Act), 29 U.S.C. § 794, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

We have substantially recounted the facts underlying this suit in a prior opinion. D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223 (10th Cir. 2004). Briefly, the relevant events began in August 1997. D.L. was renting a home in Lawrence, Kansas, and her children, R.L. and J.L., began attending public school there in Unified School District No. 497 ("the District"). 1 Aplt. App. 258. R.L. was autistic, while J.L. suffered from a milder learning disability. They resided with their mother D.L. and her boyfriend P.P., who assisted in their care. The children were receiving special educational services at public expense. 1 Aplt. App. 266-67. In November 1999, Defendant Eicher, the Director

2

of Special Education Services for the District, determined that the children were not residents because they did not sleep at D.L.'s Lawrence residence. 1 Aplt. App. 154, 157. The District demanded that D.L. and P.P. immediately withdraw the children, claiming that the children were ineligible to attend school there, and threatened legal action if D.L. and P.P. failed to comply. 1 Aplt. App. 394. D.L. and P.P. requested an IDEA due process hearing, which the District denied. 1 Aplt. App. 397-402.

The children continued to attend school in Lawrence through the end of the semester in January 2000. J.L. and R.L. then missed a week of school, during which time their parents were too sick to drive them to school, and attorneys for the District and Plaintiffs exchanged letters discussing the children's future in the district. 3 Aplt. App. 1179; 1 Aplt. App. at 397-408. D.L. then provided an affidavit of residency stating that R.L would now be residing within the district on a full-time basis, and the children resumed attending school in the District. 1 Aplt. App. 282, 423. In due course, the District discovered that the children stopped sleeping in Lawrence shortly after resuming their education in the District. 1 Aplt. App. 280. On April 18, 2000, the District brought suit in state court against D.L. and P.P. for fraud, seeking to recover the costs of providing special educational services to the children while they were nonresidents. 1 Aplt. App. 424-28. Despite the filing of the lawsuit, the children remained in District 497's schools through December 2000, when D.L. withdrew them over concerns that a teacher was being physically abusive towards R.L. 1 Aplt. App. 263. D.L. then enrolled the children in school in Kansas City, where they received an adequate education. Id.

3

Plaintiffs responded to the District's state-court suit by filing this federal action against the District and Eicher on September 29, 2000. 1 Aplt. App. 1-15. Plaintiffs alleged that (1) Defendants' refusal to provide a due process hearing prior to terminating the children's educational benefits, and the subsequent state-court suit seeking to recover the costs of providing the children such educational services, violated the children's IDEA rights; (2) the District's admissions policy violated the Rehabilitation Act, the ADA, and the Fourteenth Amendment right to due process and equal protection; and (3) various other actions taken by the District denied Plaintiffs their constitutional right to substantive due process and equal protection. 1 Aplt. App. 4-12. Based on these claims, Plaintiffs sought injunctive and declaratory relief as well as compensatory and punitive damages. 1 Aplt. App. 14.

The district court granted summary judgment to Defendants on Plaintiffs' admissions policy challenge and on their constitutional claims. See D.L. v. Unified Sch. Dist. No. 497, 270 F. Supp. 2d 1217, 1252-54, 1259-63 (D. Kan. 2002). The district court held that P.P. lacked standing to maintain any claims pertaining to educational benefits provided to the children. See id. at 1254. The district court also granted Defendant Eicher qualified immunity. D.L. v. Unified Sch. Dist. No. 497, No. 00-2439-CM, 2002 WL 31296445, at *2-4 (D. Kan. Oct. 1, 2002). After a bench trial on Plaintiffs' IDEA claim, the district court held that Plaintiffs could not recover because they could not show that the District's denial of an IDEA due process hearing deprived the children of any educational opportunities. 3 Aplt. App. at 1179-81. "Rather, the

4

evidence in the record indicates plaintiffs' lack of attendance was due to alternative causes," including D.L.'s and P.P.'s illness that prevented them from taking the children to school in January 2000. 3 Aplt. App. at 1179.

On appeal, we affirmed in part and reversed in part. D.L., 392 F.3d at 1232. We affirmed the district court's judgment regarding the IDEA claim. Id. at 1231-32. We also affirmed the district court's dismissal of P.P.'s IDEA claim based on lack of standing. Id. at 1232. We vacated the district court's judgment on all of the remaining claims—the district court's grant of summary judgment on the ADA, Rehabilitation Act, and constitutional claims, as well as the district court's grant of summary judgment for Dr. Eicher based on qualified immunity—based on Younger abstention. Id. at 1226, 1229-31. We remanded with instructions to stay proceedings on the claims for damages pending resolution of the state case and to dismiss the remaining vacated claims without prejudice. Id. at 1232.

The state case was eventually dismissed, and the federal court lifted the stay on March 22, 2007. 3 Aplt. App. 1219. The parties stipulated that Plaintiffs' Rehabilitation Act, ADA, and § 1983 claims remained for resolution. 3 Aplt. App. 1225-27. The parties disagreed about whether any of Plaintiffs' IDEA claims remained and agreed to provide supplemental briefing on this issue. 3 Aplt. App. 1226.

After receiving supplemental briefing, the district court disposed of the remaining claims on summary judgment. D.L. v. Unified Sch. Dist. No. 497, No. 00-2439-CM, 2008 WL 4148593 (D. Kan. Sept. 3, 2008). First, the district court held that Plaintiffs

5

abandoned any remaining IDEA claims.  Id. at \*4.  Second, it held that Plaintiffs' claims for declaratory relief were not viable because the Tenth Circuit instructed the court to vacate and dismiss all non-damages claims.  Id. at \*5.  Third, it dismissed Plaintiffs' challenge to the District's admissions policy based on the Rehabilitation Act, the ADA, and the Fourteenth Amendment for lack of standing.  Id. at \*5-6.  Finally, to the extent Plaintiffs' Fourteenth Amendment challenges were based on the state case, the district court determined that the Defendants' actions passed rational-basis review, and the court granted summary judgment for Defendants on these claims.  Id. at \*7.  The district court did not reach the issue of Dr. Eicher's qualified immunity nor did it specifically address P.P.'s standing regarding any of the claims.

On appeal, Plaintiffs challenge the district court's grant of summary judgment on (1) Plaintiffs' IDEA claims; (2) the Rehabilitation Act and ADA claims; and (3) the § 1983 constitutional claims.  They also challenge the district court's conclusion that (4) P.P. lacked standing to maintain any claims against the District; (5) Dr. Eicher was entitled to qualified immunity; and (6) Plaintiffs are not entitled to declaratory relief.

## II.    Discussion

We review the district court's grant of summary judgment de novo, considering all evidence in the light most favorable to the nonmoving party.  Clark v. Edmunds, 513 F.3d 1219, 1221-22 (10th Cir. 2008).  Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c)(2).

A.     IDEA Claims

After the district court lifted the stay, the parties disagreed about whether any IDEA claims survived our 2004 decision. 3 Aplt. App. 1225-27. The parties' stipulation specified "[w]hether such claims remain, and if so, whether plaintiffs are entitled to relief thereunder, shall be addressed through supplemental briefing." 3 Aplt. App. 1226. Despite the terms of the stipulation, Plaintiffs' supplemental briefing merely stated, "Plaintiffs' claims under the IDEA based on the state court suit to recover the cost of educating the children also remain for adjudication," 3 Aplt. App. 1238, and "Plaintiffs believe that their prior memoranda demonstrate that their claims are viable and simply adopt and reincorporate the same by reference," 3 Aplt. App. 1255-56. Plaintiffs did not present any new arguments or update their briefing to incorporate references to the resolution of the state-court suit. Aside from these two sentences, Plaintiffs' supplemental briefing did not even mention the IDEA.

As a result, the district court found that Plaintiffs abandoned their IDEA claims by failing to provide supplemental briefing to clarify and update the claims. D.L., 2008 WL 4148593, at *4. We agree. The stipulation specifically stated that the viability of any IDEA claim would be addressed through supplemental briefing, 3 Aplt. App. 1226, and we previously expressed that the nature of the IDEA claims was unclear, D.L., 392 F.3d at 1232. Despite these cues, Plaintiffs did not provide supplemental briefing for these claims, nor did they point the district court to prior argument that would clarify the

uncertainty. They also failed to update their briefing to provide references to the resolution of the state-court suit. In contrast, they provided supplemental briefing for all of the other stipulated claims. 3 Aplt. App. 1238-48.

As we understand Plaintiffs' IDEA argument on appeal, the District violated IDEA's guarantee of a "free appropriate public education," 20 U.S.C. § 1412(a)(1); 34 C.F.R. § 300.17, which requires that special education be furnished at no cost to parents. See 20 U.S.C. § 1401(29); 34 C.F.R. § 300.39(b)(1). They argue that they "were forced to incur significant fees, expenses and costs . . . for services which the district was obligated to provide at no cost," and the District, having accepted federal funds, nonetheless sought to recover the cost of R.L. and J.L.'s public education. Aplt. Br. 11-12 (citing, e.g. J.H.R. v. Bd. of Educ., 705 A.2d 766, 774 (N.J. Super. Ct. App. Div. 1998)). It must be remembered that Plaintiffs, who sought summary judgment and relief on this claim, had the burden of going forward and explaining why they were entitled to summary judgment. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). At a minimum, resolution of this argument requires a careful look at the claims advanced by the District in the state-court lawsuit as well as an explanation of why the costs of litigation are tantamount to the cost of special education, particularly given the IDEA's fee-shifting provisions. 20 U.S.C. § 1415(i)(3)(B); 34 C.F.R. § 300.517. We express no opinion on the merits of this issue, but conclude that the district court did not abuse its discretion in finding that Plaintiffs abandoned their IDEA claim by not providing the necessary

8

briefing.  Cf. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed . . . are waived.").

B.     Rehabilitation Act and ADA Claims

The district court granted summary judgment on Plaintiffs' Rehabilitation Act and ADA claims on the ground that Plaintiffs lacked standing to challenge the nonresident admissions policy.  3 Aplt. App. at 1265.  On appeal, Plaintiffs contend, first, that their claims were not solely based on the nonresident admission policy, and second, that they possess standing to pursue their claims that are based on the nonresident policy.

1.     Claims Not Based on the Nonresident Admission Policy

We initially consider whether Plaintiffs possess any claims under the Rehabilitation Act or ADA other than those based on the nonresident policy.  Plaintiffs did appear to allege in their complaint that they were subjected to disability discrimination based on their status as residents of the district, not just as nonresidents.  See 1 Aplt. App. at 9 ("Defendants' continuing threats of denial of appropriate academic special education programming and the refusal to recognize Plaintiffs' residency as other citizens of Lawrence are recognized, constitute prima facie discrimination." (emphasis added)).  In subsequent filings, however, Plaintiffs only alleged violations of the ADA and Rehabilitation Act based on their denial of admission under the nonresident policy.  See 2 Aplt. App. at 494; 3 Aplt. App. at 891-92.  As far back as 2002, the district court recognized that "plaintiffs' Rehabilitation Act and ADA claims [are] based entirely upon the nonresident admission policy."  D.L., 270 F. Supp. 2d at 1254.  We confirmed this

9

interpretation, noting that "Plaintiffs contend that the District's nonresident-admission policy violated the ADA and the Rehabilitation Act." D.L., 392 F.3d at 1229.

Despite these clear statements construing the ADA and Rehabilitation Act claims as applying only to the nonresident admission policy, Plaintiffs never argued (until their brief in this appeal) that the ADA and Rehabilitation Act claims had any other basis. In particular, the supplemental briefing filed in the district court following the lift of the stay discusses the ADA and Rehabilitation Act claims only in the context of the nonresident policy. See 3 Aplt. App. 1239-43.[1] Having only pursued a theory for recovery under the ADA and Rehabilitation Act based on the nonresident admission policy, Plaintiffs may not now seek to broaden their theory. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1141 (10th Cir. 2007) ("An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling."). Therefore, we consider only whether Defendants discriminated against Plaintiffs in violation of the ADA and Rehabilitation Act by application of the nonresident admission policy.

---

[1] The only reference made by Plaintiffs in the supplemental briefing to discrimination against them as residents is the following statement: "It is true that throughout this litigation plaintiffs have asserted and continue to assert that they were residents of the defendant school district. However, assuming arguendo that they were not residents, their rights were still violated by defendants' conduct." 3 Aplt. App. 1239. Nowhere in this brief do Plaintiffs argue how the District violated their rights as residents, however. This single reference to their claims as residents is no more elucidating than are the references to the IDEA discussed above in Part A. Plaintiffs' failure to clearly identify the basis of their claim is even more critical here, where both the district court and this court stated in published opinions that their claim was based solely on the nonresident admission policy. See D.L., 270 F. Supp. 2d at 1254; D.L., 392 F.3d at 1229.

## 2. Claims Based on the Nonresident Admission Policy

The district court held that Plaintiffs lacked standing to pursue the ADA and Rehabilitation Act claims with respect to the nonresident admission policy because they never sought admission to the District as nonresidents and thus suffered no injury in fact as a result of the policy. D.L., 2008 WL 4148593, at *5-6. In order to possess standing to bring a suit in federal court, a plaintiff must "establish three elements: (1) injury in fact, (2) causation, and (3) redressability." Stewart v. Kempthorne, 554 F.3d 1245, 1253 (10th Cir. 2009) (citing ACLU of N.M. v. Santillanes, 546 F.3d 1313, 1317-18 (10th Cir. 2008)). An "injury in fact" is the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Stewart, 554 F.3d at 1253 (quoting ACLU of N.M., 546 F.3d at 1318). The district court in this case concluded that R.L. and J.L. never applied for admission under the nonresident admission policy in District 497, and therefore suffered no injury in fact as a result of that policy.

Plaintiffs argue that they were not required to apply under the nonresident policy because the District informed them that their application would be denied. In a letter dated January 14, 2000, a lawyer for the District sent Plaintiffs' attorney a letter, stating, "Simply put, the District lacks the capacity to serve students with autism besides those who have legal residences in the District. Accordingly, the District is not currently accepting nonresident students with autism, and has not accepted nonresident students with that disability for quite some time." 2 Aplt. App. 634. Plaintiffs clearly referenced

11

the letter in their supplemental briefing. See 3 Aplt. App. 1240 ("In a letter from their attorney to plaintiffs' attorney dated January 14, 2000, defendants advised that R.L. and J.L. would not be admitted to the school district as non-residents because the district does not accept non-resident students with autism."). According to Plaintiffs, this letter satisfies the injury in fact inquiry because it establishes that application under the nonresident policy would have been futile. See, e.g., United States v. Hardman, 297 F.3d 1116, 1121 (10th Cir. 2002) (en banc) ("When . . . it would have been futile for a claimant to apply for a benefit, courts have not denied the claimant standing because of his failure to apply.").

Even if the letter establishes that applying for admission would have been futile, Plaintiffs still lack standing because they cannot establish any causation between the Defendants' allegedly discriminatory conduct and any injury suffered by Plaintiffs. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (holding that standing requires establishment of a "causal connection between the injury and the conduct"). Specifically, Plaintiffs are unable to show that any period in which the children were absent from school can be attributed to Defendants. The only relevant period appears to be the week in January 2000 when the children did not attend school. In the district court's ruling on Plaintiffs' IDEA claims, the court made the following findings of fact regarding that week:

> (1)     The court finds plaintiffs were permitted to attend school on January 13, 2000.

12

(2)     The court takes judicial notice that no classes were held in the district on Monday, January 17, 2000, due to the Dr. Martin Luther King, Jr. holiday.

(3)     The court finds that R.L. and J.L. did not attend school on January 18 and 19 because, as stated by the attorney for plaintiffs at the time, D.L. and P.P. were too sick to drive the children to school.

(4)     The court finds that R.L. and J.L. were permitted to return to school on January 24, 2000, the day upon which D.L. returned the affidavit of residency.  However, D.L. could have returned the letter prior to such time, and the children could have attended school in the district as early as January 20, 2000.

3 Aplt. App. at 1179; see also D.L., 392 F.3d at 1232 ("Plaintiffs do not contend on appeal that expulsion of the children between January 14 and January 21, 2000, constitutes a substantive educational harm [under the IDEA]. (Apparently, Mother and P.P. were too ill to take the children to school.)").  After the children resumed attending the school in January 2000, they remained enrolled in the District until D.L. withdrew them in January 2001 for reasons unrelated to any alleged discrimination.

Based on this chronology, then, the only day that Plaintiffs may have suffered any injury that was caused by a discriminatory application of the nonresident policy—as opposed to being caused by a family illness or a failure to return the affidavit of residency—was Friday, January 14, 2000.  However, that was the date of the letter that the District sent to Plaintiffs, informing them that they would not be admitted as nonresidents; the children's absence from school that day thus cannot be attributed to the letter, as the letter would have been received after the parents had already decided whether to send the children to school.  In any event, Plaintiffs bear the burden of proof on jurisdictional issues such as standing, and they have not shown that their absence from

13

school between January 13 and January 24 was caused by the application of the District's nonresident admission policy as opposed to the other factors mentioned by the district court. See Bear Lodge Multiple Use Ass'n v. Babbitt, 175 F.3d 814, 821 (10th Cir. 1999) ("The party invoking federal jurisdiction bears the burden of . . . coming forward with evidence of specific facts which prove standing.") Therefore, even if Plaintiffs established that application under the nonresident policy would have been futile, they nevertheless lack standing because they have not demonstrated any causation between the Defendants' actions and their own injury.

C.      Section 1983 Claims

The district court granted summary judgment in favor of Defendants on Plaintiffs' § 1983 claims that Defendants violated their Fourteenth Amendment rights to due process and equal protection of the law.

Plaintiffs claim on appeal that their procedural due process rights were violated. The district court concluded that "Plaintiffs waived their procedural due process claims" because the Stipulation Regarding Status of Claims, filed by the parties after the stay was lifted, listed only "Substantive Due Process/Equal Protection" as § 1983 claims that remained for resolution. D.L., 2008 WL 4148593, at *8; 3 Aplt. App. at 1226. We agree that Plaintiffs waived any procedural due process claim they may have possessed by failing to raise it in the Stipulation, and we decline to address that claim on appeal. See Stewart v. U.S. Dep't of Interior, 554 F.3d 1236, 1245 n.1 (10th Cir. 2009) (stating that arguments not raised in the district court are waived on appeal).

14

Next, Plaintiffs contend that their substantive due process rights to travel and to establish a residence were violated by Defendants. See Jones v. Helms, 452 U.S. 412, 418 (1981) (recognizing the "fundamental nature" of a U.S. citizen's right "to travel from one State to another and to take up residence in the State of his choice"); see also Zobel v. Williams, 457 U.S. 55, 76-77 (1982) ("It is difficult to imagine a right more essential to the Nation as a whole than the right to establish residence in a new State."). These claims must fail, however, because the constitutional rights at issue apply only to interstate travel, and the travel that Plaintiffs claim was restricted was intrastate travel. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 277 (1993) (stating that "a purely intrastate restriction does not implicate the right of interstate travel"). Plaintiffs' citations to Kansas case law to support their claim that intrastate travel is a fundamental right are unavailing, as § 1983 affords a remedy for violations of federal law and does not "provide a basis for redressing violations of state law." Jones v. City & County of Denver, Colo., 854 F.2d 1206, 1209 (10th Cir. 1988).

Finally, Plaintiffs also claim that they were denied their right to an education in violation of the Fourteenth Amendment's guarantees of equal protection and substantive due process. The district court found that "Plaintiffs' supplemental filings are unclear as to what actions defendants took to violate [P]laintiffs' rights." D.L., 2008 WL 4148593, at *7. The court concluded that to the extent their claims were based on the nonresident admissions policy, Plaintiffs lacked standing to pursue those claims for the same reasons they lacked standing to bring the ADA and Rehabilitation Act challenges to that policy.

15

Id.  To the extent Plaintiffs' Fourteenth Amendment challenge was based on the District's filing of the state-court lawsuit, the court concluded that rational-basis review applied and the District's actions were rationally related to a legitimate government interest.  Id.  On appeal, Plaintiffs did not advance a theory that the state-court lawsuit violated Plaintiffs' Fourteenth Amendment rights, so to the extent that Plaintiffs argued such a theory below, that argument is now waived.  See Green Country Food Mkt., Inc v. Bottling Group, LLC, 371 F.3d 1275, 1285 n.5 (10th Cir. 2004) (holding that argument not advanced on appeal is waived).  As to Plaintiffs' claim that their Fourteenth Amendment rights were violated by the nonresident admissions policy, Plaintiffs lack standing to challenge that policy for the reasons discussed above.  Therefore, Plaintiffs have not demonstrated the existence of a genuine issue of material fact as to any of their claims under § 1983.

### D. Claims for Declaratory Relief

We previously dismissed without prejudice all of Plaintiffs' claims for declaratory and injunctive relief.  D.L., 392 F.3d at 1232.  Both parties acknowledged in the post-remand stipulation that the claims for declaratory and injunctive relief had been dismissed.  3 Aplt. App. 1225-27.  Despite the stipulation, Plaintiffs argued in their post-remand supplemental briefing that they are entitled to declaratory relief.  3 Aplt. App. 1240-43.

The district court refused to consider Plaintiffs' claims for declaratory relief, explaining that the court had already dismissed these claims as directed by the Tenth

16

Circuit.  <u>D.L.</u>, 2008 WL 4148593, at \*5.  Given our mandate to dismiss non-damages claims, the parties' stipulation acknowledging that such claims had been dismissed, and Plaintiffs' failure to amend the pretrial order or otherwise resurrect any prior claims for declaratory relief, the district court was correct in refusing to consider these claims, and we refuse to consider them now.[2]

## III.    Conclusion

We therefore AFFIRM the judgment of the district court.

---

[2] Because we affirm the grant of summary judgment in favor of Defendants, we have no need to consider Plaintiffs' additional arguments that the district court erred in granting summary judgment against P.P. due to a lack of standing, and in granting Defendant Eicher qualified immunity.