FILED
United States Court of Appeals
Tenth Circuit

**October 12, 2011**

Elisabeth A. Shumaker
Clerk of Court

BILL THIEBAUT, in his official capacity
as District Attorney for the Tenth Judicial
District, Colorado; OFFICE OF THE
DISTRICT ATTORNEY FOR THE
TENTH JUDICIAL DISTRICT,
COLORADO; PEOPLE OF THE STATE
OF COLORADO,

     Plaintiffs - Appellants,

SIERRA CLUB,

     Plaintiff,

v.

COLORADO SPRINGS UTILITIES, an
enterprise of the City of Colorado
Springs; CITY OF COLORADO
SPRINGS, a municipal corporation,

     Defendants - Appellees.

No. 10-1471
(D.C. No. 1:05-CV-01994-WDM-BNB)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before **KELLY**, **SILER**[†] and **MATHESON**, Circuit Judges.

---

     * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

     † The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

In 2005, Bill Thiebaut—the District Attorney for the Tenth Judicial District of Colorado—filed a lawsuit pursuant to section 1365(a) of the Clean Water Act ("CWA") against the City of Colorado Springs (the "City"). Mr. Thiebaut named three plaintiffs: (1) himself, in his official capacity as District Attorney, (2) the Office of the District Attorney for the Tenth Judicial District of Colorado, and (3) the People of the State of Colorado (collectively "Mr. Thiebaut").[1] Mr. Thiebaut sought injunctive relief and civil penalties against the City for its alleged discharge of pollutants into a creek in violation of the CWA.

The district court granted the City's motion for summary judgment, concluding Mr. Thiebaut lacked standing to bring his claims. Mr. Thiebaut has appealed that ruling. We hold that Mr. Thiebaut lacks standing and affirm the district court's grant of summary judgment in favor of the City.

## I. BACKGROUND

### A. *Facts*

Because this appeal is from a grant of summary judgment in favor of the City, we recite the following facts in the light most favorable to the nonmoving party, Mr. Thiebaut. *See Fredericks v. Jonsson*, 609 F.3d 1096, 1097 (10th Cir. 2010).

---

[1] For convenience and clarity, throughout this opinion we refer to the plaintiffs-appellants collectively as "Mr. Thiebaut."

Fountain Creek is a watershed that flows through Colorado Springs, Colorado and Pueblo County, Colorado. From 1998 through at least 2007, the City allegedly discharged raw sewage, non-potable water, and chlorine into Fountain Creek in violation of the CWA. These discharges have had a significant adverse impact on Fountain Creek and the recreational opportunities and economy in Pueblo County, Colorado.

Mr. Thiebaut is the District Attorney for the Tenth Judicial District of Colorado, which encompasses Pueblo County, Colorado. Citizens of Pueblo County approached Mr. Thiebaut with concerns about the City's alleged pollution of Fountain Creek.

## B. *Procedural History*

In October 2005, Mr. Thiebaut filed a CWA citizen suit against the City in the United States District Court for the District of Colorado. He sought an order enjoining the City from illegally discharging sewage, non-potable water, and chlorine into Fountain Creek and assessing civil penalties against the City for its past pollution of the creek.

After Mr. Thiebaut initiated his suit, the Sierra Club filed a similar suit against the City, alleging violations of the CWA. Because the claims filed and relief sought by the Sierra Club and Mr. Thiebaut were nearly identical, the district court consolidated the two suits into a single case.

After the cases were consolidated, the City filed a motion for summary judgment, alleging that Mr. Thiebaut and the Sierra Club lacked standing. The City argued, among other things, that Mr. Thiebaut lacked Article III and statutory standing because he was not authorized under Colorado state law to bring a CWA citizen suit in federal court. Mr.

Thiebaut opposed the motion, arguing he had standing in three ways.  First, he contended he had "direct standing and authority to bring [his] suit under Colorado law."  *Thiebaut v. Colo. Springs Utils.*, No. 05-CV-01994-WDM-BNB, 2007 U.S. Dist. LEXIS 63963, at *3 (D. Colo. Aug. 29, 2007).  Second, he argued he had "*parens patriae* standing to bring [his] suit on behalf of the citizens of Colorado and of his district."  *Id.*  Finally, he contended he had "associational standing."  *Id.*

The district court rejected all of Mr. Thiebaut's arguments.  It first stated that Mr. Thiebaut did not have direct standing to assert his CWA claims in his official capacity because the Colorado Legislature has not authorized him to file a CWA citizen suit in federal court.  *Id.* at *5-6.  It further stated that Mr. Thiebaut did not have *parens patriae* standing because the Colorado Legislature has not authorized him to invoke the sovereign capacity of the State of Colorado and because "the citizens of Colorado are . . . able to act for themselves in this matter."  *Id.* at *6-7.  Finally, the court concluded Mr. Thiebaut did not have associational standing because, "[e]ven assuming that the Tenth Judicial District is an 'association' and [that] its citizens are 'members,'" the interests Mr. Thiebaut's suit sought to protect are not "germane to his office's purpose."  *Id.* at *7-8.  After rejecting Mr. Thiebaut's arguments, the district court granted the City's motion for summary judgment and dismissed all of Mr. Thiebaut's claims for lack of standing.  *Id.* at *8.

Mr. Thiebaut filed a motion for reconsideration.  He argued that the district court erred in applying state rather than federal law to determine whether he had standing to

-4-

assert his claims. The district court denied the motion. *See Thiebaut v. Colo. Springs Utils.*, No. 1:05-CV-01994 (D. Colo. Jan. 24, 2008).

On appeal, Mr. Thiebaut argues that the district court erred in concluding he lacks standing. He contends he has Article III standing under three alternative theories: (1) *parens patriae* standing, (2) associational standing, or (3) a concept he refers to as "standing for one is standing for all."[2] Aplt. Opening Br., at 27-28. Because the district court entered a final judgment, we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

The sole issue is whether Mr. Thiebaut has standing to bring his CWA citizen suit in federal court in his official capacity as district attorney. "We review the question of whether a plaintiff has constitutional standing de novo." *Am. Atheists, Inc. v. Davenport*,

---

[2] At oral argument, Mr. Thiebaut's counsel stated that Mr. Thiebaut was also making a "direct" standing argument on appeal. But our review of his briefing indicates that he has not adequately raised such an argument. As the plaintiff-appellant, Mr. Thiebaut has the burden of demonstrating he has standing. *See Utah Animal Rights Coalition v. Salt Lake County*, 566 F.3d 1236, 1240 (10th Cir. 2009) ("The party invoking federal jurisdiction—here, the plaintiffs—bears the burden to demonstrate standing"). Nowhere in his briefing does Mr. Thiebaut argue that he has direct standing to assert his claims in his official capacity as district attorney. Additionally, nowhere in his brief does Mr. Thiebaut allege he suffered injury in his official capacity as a result of the City's conduct, a requisite element of direct standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because his arguments on the issue are inadequate, we do not address whether Mr. Thiebaut has "direct" standing to assert his claims. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

637 F.3d 1095, 1113 (10th Cir. 2010) (quotations omitted).

Mr. Thiebaut filed this action under section 1365(a) of the CWA, which provides that "any [interested person] may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter." Although the CWA broadly provides that any interested person may assert a CWA citizen suit, "a [CWA] plaintiff must nevertheless satisfy the standing requirements of Article III of the U.S. Constitution to bring such an action." *American Forest & Paper Ass'n v. EPA*, 154 F.3d 1155, 1158 (10th Cir. 1998); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.24 (1982) (stating that a congressional enactment may not lower the threshold requirements of standing under Article III).

To satisfy the standing requirement of Article III, a plaintiff must demonstrate: (1) he has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

In his complaint and on the caption of his appellate briefs, Mr. Thiebaut lists three plaintiffs: (1) himself in his official capacity, (2) the Office of the District Attorney for the Tenth Judicial District, and (3) the People of the State of Colorado. But the arguments in his opening brief are limited to whether *he*, in his official capacity, qualifies for representational standing or whether *he*, in his official capacity, has standing because

-6-

his co-plaintiff, the Sierra Club, had standing.[3]  In other words, Mr. Thiebaut is the true

appellant in this case.  At no time before the district court or this court has Mr. Thiebaut

claimed that he has sued and has standing in his individual capacity.[4]  This appeal

therefore reduces to three issues:  Does Mr. Thiebaut, in his official capacity as district

attorney, have (1) *parens patriae* standing, (2) associational standing, or (3) standing

because the Sierra Club had standing?  The following discussion addresses each of these

issues and concludes that Mr. Thiebaut lacks standing.

## A. *Parens Patriae* **Standing**

Mr. Thiebaut first contends that he qualifies for *parens patriae* standing.  We

disagree.

"*Parens patriae* is a standing doctrine that allows states to vindicate their interests

in federal court."[5]  *Sierra Club v. Two Elk Generation Partners*, 646 F.3d 1258, 1273

---

[3] The only arguments concerning the independent standing or capacity of the Office of the District Attorney for the Tenth Judicial District of Colorado or the People of the State of Colorado were raised in Mr. Thiebaut's reply brief.  We have consistently stated that "arguments raised for the first time in a reply brief are generally deemed waived."  *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).  We perceive no grounds for deviating from that practice in this case.

[4] At oral argument, counsel for the City conceded that Mr. Thiebaut would have standing if he had sued as an individual citizen, but he chose not to do so.  Oral Argument at 11:55-12:20, Thiebaut v. Colorado Springs Utilities, ____ Fed. Appx. ____ (No. 10-1471).

[5] The phrase "*parens patriae*" "may also refer to the common-law concept that the state has a duty to act as a guardian of children and the mentally disabled."  *Sierra Club*, 646 F.3d at 1273 n.3 (10th Cir. 2011) (Lucero, J., dissenting).

(Lucero, J., dissenting); *see also* Kathleen C. Engel, *Do Cities Have Standing? Redressing the Externalities of Predatory Lending*, 38 Conn. L. Rev. 355, 362 (2006) ("The great bulk of cases recognizing [*parens patriae*] standing involve states invoking their right to protect their citizens from harm."). In *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982), the Supreme Court identified three requirements that a state must satisfy to qualify for *parens patriae* standing.[6] *See id.* at 607. First, the state must "articulate an interest apart from the interests of particular private parties, *i.e.*, the [plaintiff] must be more than a nominal party." *Id.* Second, the state must "express a quasi-sovereign interest" that it seeks to protect. *Id.* Finally, the state must "allege injury to a sufficiently substantial segment of its population." *Id.* at 607; *see also Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1469 (10th Cir. 1993) (discussing *parens patriae* standing).

Mr. Thiebaut argues that the district court erred in concluding he lacks authority to sue as *parens patriae*. He contends the district court could consider only federal law in conducting its standing analysis and that it therefore erred in considering Colorado state law to determine whether he qualifies for *parens patriae* standing. He argues, in the alternative, that he qualifies for *parens patriae* standing because the Colorado Legislature

---

[6] Because we conclude that Mr. Thiebaut does not qualify for *parens patriae* standing, we do not address whether or in what circumstances a plaintiff that is not a state or state attorney general may qualify for *parens patriae* standing.

has authorized district attorneys in their official capacities to file CWA citizen suits in federal courts.

### 1. *The District Court Did Not Err in Considering State Law*

The district court concluded that Mr. Thiebaut did not qualify for *parens patriae* standing because he failed to identify legal authority to invoke the sovereign capacity of the state. Mr. Thiebaut argues the district court erred in considering Colorado state law because "federal law dictates the question of standing." Aplt. Opening Br., at 11. We disagree.

To qualify for *parens patriae* standing, a plaintiff must "express a quasi-sovereign interest" that it seeks to protect. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 607. The Supreme Court has defined quasi-sovereign interests as "a set of interests that [a] State has in the well-being of its populace," including the health, safety, welfare, and economical and physical well-being of its citizens. *Id.* at 602.

We have previously indicated that in deciding whether a plaintiff qualifies for *parens patriae* standing, it is appropriate to look to state law to determine whether the plaintiff has been authorized to represent a state's sovereign interests. In *Housing Authority of the Kaw Tribe of Indians v. Ponca City*, 952 F.2d 1183 (10th Cir. 1991), we analyzed whether an Oklahoma housing authority had standing to sue as *parens patriae*. *See id.* at 1192-93. After reviewing the housing authority's arguments, we noted it had presented "no authorization by the State of Oklahoma to represent the state's sovereign interests." *Id.* at 1193. As a result of this lack of authority, we held that the housing

authority could not sue as *parens patriae*.  *See id.*

Although it is often unnecessary to consider state law to determine whether a plaintiff has standing to assert a federal claim, *Kaw Tribe* demonstrates that it is appropriate for a federal court to do so in deciding whether a plaintiff qualifies for *parens patriae* standing.  Based on this precedent, we reject Mr. Thiebaut's argument that the district court erred in considering Colorado state law in its *parens patriae* standing analysis.

### 2. *Colorado Has Not Authorized Mr. Thiebaut to Bring His Claims*

As with other theories of standing, plaintiffs bear the burden of establishing that they qualify for *parens patriae* standing.  *See, e.g.*, *D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 775 (10th Cir. 2010) ("Plaintiffs bear the burden of proof on jurisdictional issues such as standing.").  To satisfy this burden, plaintiffs must demonstrate that they have authority to represent a state's sovereign or quasi-sovereign interests.  *See Kaw Tribe*, 952 F.2d at 1193.

Mr. Thiebaut has not satisfied this burden.  He notes that the Colorado Legislature specifically allows district attorneys to bring a public nuisance suit in state court to abate "[a]ny unlawful pollution or contamination of any surface or subsurface waters in the state."  Aplt. Opening Br., at 22 (quoting Colo. Rev. Stat. § 16-13-305(e)).  But this limited grant of authority does not provide Mr. Thiebaut with authority to represent Colorado's sovereign or quasi-sovereign interests in a CWA citizen suit in federal court. Moreover, our review of the relevant statutory scheme has not revealed any general grant

of authority to Colorado district attorneys to protect the state's sovereign or quasi-sovereign interests. Because the State of Colorado has not authorized Mr. Thiebaut to represent its sovereign interests in this matter, we hold that he does not qualify for *parens patriae* standing.

## B. *Associational Standing*

In his second attempt to qualify for representational standing, Mr. Thiebaut argues he has associational standing to sue on behalf of the citizens of the Tenth Judicial District of Colorado and on behalf of all of the People of the State of Colorado. We reject this argument.

An association has standing to sue on behalf of its members only if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

The district court concluded that Mr. Thiebaut did not have associational standing. Specifically, the court stated "[e]ven assuming that the Tenth Judicial District is an 'association' . . . [Mr.] Thiebaut's argument still fails. . . . [I]f [his] office does not have authority under Colorado law to bring a civil CWA action in federal court, then it cannot be said that such an action is germane to his office's purpose." *Thiebaut v. Colo. Springs Utils.*, 2007 U.S. Dist. LEXIS 63963, at *7-8 (D. Colo. Aug. 29, 2007). We agree with the district court's analysis.

-11-

As discussed above, it is often unnecessary for federal courts to consider state law to determine whether a plaintiff has standing to assert a federal claim. But because Mr. Thiebaut has brought his claims in his official capacity as district attorney, we must look to Colorado law to determine the purpose of his office.

The Colorado Constitution provides that district attorneys "shall . . . perform such duties as provided by law." Colo. Const. art. VI, § 13. The Colorado Supreme Court has stated that pursuant to this constitutional provision, the Colorado Legislature has authority to determine the duties and responsibilities of a district attorney. *See People ex rel. Losavio v. Gentry*, 606 P.2d 57, 61-62 (Colo. 1980); *see also* Colo. Rev. Stat. § 20-1-107(1) ("The general assembly finds that the office of the district attorney was created by the state constitution and that the state constitution gives to the general assembly the exclusive authority to prescribe the duties of the office of the district attorney."). The Colorado Legislature has fulfilled this obligation by outlining the various duties and responsibilities of district attorneys in several sections of the Colorado Revised Statutes. *See, e.g.*, Colo. Rev. Stat. §§ 20-1-102, -106. Nowhere in those statutory provisions has the Colorado Legislature granted district attorneys authority to protect the health, safety, and welfare of the people of Colorado by seeking to remedy violations of the CWA in federal court.

Because the Colorado Legislature has defined the purpose and duties of Mr. Thiebaut's office and because it has not granted his office authority to protect the health, safety, and welfare of the people of Colorado by filing a CWA citizen suit in federal

-12-

court, the interests Mr. Thiebaut seeks to protect in the instant suit are not germane to his office's purpose.[7] We therefore hold that Mr. Thiebaut lacks associational standing to bring his claims.

## C. *"Standing for One is Standing for All"*

In addition to arguing that he qualifies for *parens patriae* and associational standing, Mr. Thiebaut contends he has standing under a concept he refers to as "standing for one is standing for all." Mr. Thiebaut notes that in *Massachusetts v. EPA*, 549 U.S. 497 (2007), the Supreme Court stated that "[o]nly one of the petitioners needs to have standing to permit [it] to consider [a] petition for review." *Id.* at 518; *see also Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981) ("Because we find [that one plaintiff] has standing, we do not consider the standing of the other plaintiffs."). Relying on this statement, he argues that the district court should have permitted him to remain as a plaintiff in this case after it determined that the Sierra Club had standing. In other words, Mr. Thiebaut argues that once a court has found that one plaintiff in a case has standing, it must permit all co-plaintiffs to remain in the case even if it determines they do not have standing. We disagree.

The principle on which Mr. Thiebaut relies encourages judicial efficiency by

---

[7] Because we hold that the interests Mr. Thiebaut seeks to protect are not germane to his office's purpose, we need not decide whether the district attorney's office is a membership association that might qualify for associational standing or whether the claims asserted by Mr. Thiebaut would require the participation of individual "members" of his office.

permitting a court to proceed to the merits of a case involving multiple plaintiffs seeking identical relief when it is clear that at least one plaintiff has standing. *See Utah Ass'n of Cntys. v. Bush*, 455 F.3d 1094, 1098 (10th Cir. 2006) (noting that "the district court declined 'in the interest of judicial economy' to address" whether one plaintiff had standing where the defendant conceded that another plaintiff had standing).

But contrary to Mr. Thiebaut's arguments, nothing in the cases addressing this principle suggests that a court *must* permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing. Instead, courts retain discretion to analyze the standing of all plaintiffs in a case and to dismiss those plaintiffs that lack standing. *See id.*; *see also Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451-53 (10th Cir. 1994) (analyzing individual plaintiffs' standing separately and dismissing some plaintiffs for lack of standing even though other plaintiffs had standing); *We Are America/Somos Am. v. Maricopa Cnty. Bd. of Supervisors*, No. 06-2816-PHX-RCB, 2011 U.S. Dist. LEXIS 92714, at *17 (D. Ariz. Aug. 18, 2011) ("Th[e] general rule [that only one plaintiff needs standing to make an issue justiciable] does not strictly prohibit a district court, in a multiple plaintiff case such as this, from considering the standing of the other plaintiffs even if it finds that one plaintiff has standing."). Based on this discretion, we reject Mr. Thiebaut's "standing for one is standing for all" theory as it applies to this case and affirm the district court's decision to dismiss his claims for lack of standing.

### III. CONCLUSION

We hold that Mr. Thiebaut does not qualify for *parens patriae* or associational

-14-

standing.  Additionally, we reject Mr. Thiebaut's "standing for one is standing for all"

theory as applied to this case and hold that the district court did not err in dismissing Mr.

Thiebaut's claims even though it determined that the Sierra Club had standing.  Because

Mr. Thiebaut lacks standing, we **affirm** the district court's grant of summary judgment in

favor of the City and **dismiss** this appeal.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge